Robert Anthony REED III et al., Plaintiffs–Appellees,

v.

James RHODES et al., Defendants,

and

Cleveland Board of Education, Defendant–Appellant.

No. 80–3574.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 22, 1980.

Decided Dec. 8, 1980.

George I. Meisel, Square, Sanders & Dempsey, William H. Baughman, Jr., John H. Bustamante, Bustamante, Donohoe, Palmisano & Co., Cleveland, Ohio, for defendant–appellant.

James L. Hardiman, Cleveland, Ohio, Thomas I. Atkins, Gen. Counsel, NAACP Special Contribution Fund, New York City, for plaintiffs–appellees.

Before EDWARDS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

PER CURIAM.

The Cleveland Board of Education appeals from two district court orders in this ongoing desegregation case–a Memorandum Opinion and Order entered on July 25, 1980 and a Judgment Entry filed August 6, 1980. Relying on findings and conclusions contained in its July 25th memorandum, the August 6th entry adjudged the "Cleveland Defendants"[1] in civil contempt and ordered the Cleveland Board of Education to employ an "Administrator of Desegregation" to be selected by the district court. The decision of the district court came after extensive hearings and there is no contention of a due process violation.

The civil contempt issue was raised by a motion to show cause filed by the plaintiffs on March 25, 1980. This motion was addressed solely to the failure of the defendants to effectively implement transportation of pupils during Phase II of the court–ordered desegregation plan. On March 28, 1980 the district court issued an order directing the defendants to show cause why they should not be held in contempt for nineteen alleged violations of previous court orders. Two of the cited matters referred to the problems with transportation which were the basis of the plaintiffs' motion. The other charges related to a variety of problems concerning community relations and educational components of the court–ordered plan which had been raised in an earlier report of the Special Master. During the hearings on the contempt issue, the United States as amicus curiae proposed that the court appoint a desegregation administrator with specified powers. Though the contempt issue and the matter of appointment of a desegregation administrator were heard together and decided at the same time, we do not believe they are completely interdependent.[2] Thus we have concluded to affirm the appointment of the desegregation administrator while vacating the adjudication of civil contempt.

The basic remedial order in this case was entered by the district court on February 6, 1978. On January 8, 1979 this court stayed the order of February 6, 1978 pending decision by the Supreme Court of two other school desegregation cases involving Ohio school systems. The stay was vacated by

---

1. The "Cleveland Defendants" are the Cleveland Board of Education and its members, and the superintendent of the Cleveland City School District. *See Reed v. Rhodes*, 422 F.Supp. 708, 712 (N.D.Ohio 1976).

2. In its brief before this court, amicus curiae the United States noted that it had not asked for a contempt citation because, in its opinion, such a finding is not a prerequisite for the appointment of a desegregation administrator. We agree.

this court on August 23, 1979. *Reed v. Rhodes,* 607 F.2d 714, 737 (6th Cir. 1979). Though planning for systemwide desegregation of the Cleveland school system was required from February 6, 1978, actual implementation was delayed until late August 1979.

The failure of the defendants to achieve the results ordered by the district court on the schedule prescribed by the court is undeniably serious. Nevertheless, the transportation problems to which the original motion was addressed have been solved to a great extent by the employment of an experienced school transportation director. Progress has been made in correcting deficiencies in other areas of the school board's performance.

 Unlike criminal contempt, civil contempt is not designed to be punitive or to vindicate the honor of the court. Rather, its purpose is to vindicate the rights of parties to the action. To the extent the appellant has not corrected its past failures to carry out the district court's remedial orders, the plaintiffs are now assured of receiving the benefit of those orders from the desegregation administrator. The powers of the newly–created office include "complete authority to direct the efforts [of] employees, and resources of the local defendants for the purpose of implementing the remedial orders of February 8 and June 16, 1978 . . . ." Memorandum Opinion and Order of July 25, 1980. Joint Appendix, Vol. I. p. 95. Without minimizing in any way the past failures of the Cleveland Board, we conclude that the record does not establish civil contempt by clear and convincing proof. It is to be expected that cooperation between the Cleveland defendants and the Administrator of Desegregation will be such as to bring the goals of the remedial order to early fruition. Contempt sanctions at this time would have a divisive impact which would deter efforts to achieve those goals.

 We have considered carefully the arguments of the appellant that the requirement of a court–appointed desegregation administrator is in reality an order placing the Cleveland school system in receivership. Though the powers to be exercised by the administrator are broad, they are confined to implementation of the district court's remedial orders in this desegregation case. In view of the deficiencies in the efforts of the Cleveland Board to remedy conditions that flowed from past practices which this court has found unconstitutional, we conclude that the district court neither exceeded its authority nor abused its discretion in requiring the employment of a court–selected desegregation administrator.

In its Memorandum Opinion and Order of July 25, 1980 the district court included the following language:

6. The Court hereby enjoins the Board of Education, the Superintendent, the Deputy Superintendent of Desegregation Implementation, and all other administrators employed by the local defendants from interfering with the Administrator of Desegregation as the Administrator performs the duties set forth in this order. The Administrator of Desegregation shall report to the Court directly or through the Special Master any such interference or any other matter deemed to be of importance in achieving compliance with the Remedial Order. The Cleveland defendants shall be held personally liable for any acts of interference found by this Court.

The last sentence quoted above is stricken.

We construe "interfering" and "interference" as used by the district court to apply only to actions taken by the Administrator of Desegregation in carrying out the terms of the remedial orders of February 8 and June 16, 1978. The injunctive provisions are not construed to foreclose discussion by board members of any proposals put forward by the Administrator of Desegregation. Nor do these provisions require the Cleveland Board of Education to forego its responsibilities for administration of the affairs of the Cleveland school system in matters outside the scope of the duties imposed upon the Administrator of Desegregation.

That portion of the judgment of August 6, 1980 directing the appellant to appoint an Administrator of Desegregation to be selected by the court is affirmed. That portion of the August 6, 1980 judgment holding the Cleveland Defendants in civil contempt is reversed and the show cause order is discharged. The appellant will pay costs on appeal.