The SPRINGFIELD BANK, Plaintiff,

v.

Louis B. CASERTA, Defendant.

In the Matter of Louis B. CASERTA (and) Jo F. Caserta, Debtors.

Bankruptcy No. 3–80–02389.
Adv. No. 3–80–0487.

United States Bankruptcy Court,
S. D. Ohio,
Western Division.

March 4, 1981.

Barry P. Reich, Springfield, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, Trustee.

John P. Petzold, Dayton, Ohio, for defendant.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

Plaintiff, The Springfield Bank, filed a complaint on 26 August 1980 for relief from the stay provided by 11 U.S.C. § 362(a) with regard to a 1979 Buick Riviera automobile; on 18 September 1980 the Defendant, Louis B. Caserta filed his answer and counter claim alleging contempt of court for wrongful and malicious repossession, seeking damages in the amount of $1,500.00 for devaluation of the vehicle and punitive damages in the amount of $100,000.00; on 30 September 1980, Plaintiff filed its Reply to Defendant's Counter Claim.

After the conclusion of discovery proceedings, the case came on for trial on 19 Janu-

ary 1981 and was submitted on the evidence; pretrial order; and memorandum of law filed in behalf of Defendant on 28 January 1981 and in behalf of Plaintiff on 30 January 1981.

## FINDINGS OF FACT

Louis B. Caserta and Jo Frances Caserta instituted a joint Chapter 13 case on 7 August 1980. Notices were transmitted on 13 August 1980, the hearing on confirmation having been set for September 11. The debtors scheduled secured debts in the sum of $28,400.00 and unsecured in the sum of $510.00. At the hearing debtors requested a continuance to increase the payments from $200.00 monthly to $350.00 monthly and for disposition of three adversarial proceedings. As requested, the hearing on confirmation was continued and immediate payments to the Trustee were inaugurated by an interim order. To date an order of confirmation has not been entered.

On 12 August 1980 Plaintiff Bank repossessed the 1979 Buick, before receiving the court notice. The seizure was made from Caserta's home driveway during a time span of less than one minute in a situation and condition of turmoil—children playing in front of the house, a large german shepherd barking, the frustration and desperation of entering the vehicle and backing out of the driveway, and Caserta's shouts as he ran from the house. The bank employee did not hear what Caserta was shouting and a "blonde female" employee of the Bank, identified by Caserta waiting in a vehicle on the street, was in fact a male employee with less than a profuse head of hair. The bank employee already had keys to the vehicle from a prior repossession and return.

At the time of repossession Caserta was over two months delinquent in installment payments and the insurance on the vehicle had lapsed.

After the repossession, the Bank continued to hold the vehicle and refused to deliver it to Caserta for thirty-four or thirty-five days, despite repeated requests by Caserta on the strength of the pending Chapter 13 proceedings as advised by his attorney over the telephone on August 12.

Caserta's claim that scratches were discovered on one side of the vehicle when it was returned to his possession has not been proven. His personal estimate of damages runs from $25.00 or $30.00 to $800.00 (if the paint could not be matched). The Bank has established that the vehicle was inspected and photographed before it was returned and no scratches were observed and the inspection report and photographs substantiated the inspection. Hence, this aspect must be ignored for lack of proof. If any conclusion be drawn from the photographs, such would be that Caserta's opinion of damages (if any) is extremely exaggerated.

## CONCLUSIONS OF LAW

Plaintiff relies primarily on the decision *In re Abt*, 1 C.B.C.2d 374, 2 B.R. 323, 5 B.C.D. 1237 (Bkrtcy.,E.D.Pa.1980); and the Defendant relies primarily on *In re MacDonald*, 2 C.B.C.2d 511, 6 B.R. 23 (Bkrtcy.,N.D. Ohio 1980) and *In re Womack*, 2 C.B.C.2d 575, 4 B.R. 632, 6 B.C.D. 543 (Bkrtcy.,E.D. Tennessee, 1980).

In analyzing these and similar cases on the subject of contempt of court, it is the opinion of this court that the initial conclusion must be to draw a distinction between illegal actions or conduct between litigants and such conduct which constitutes contempt of court.

As further delineated and discussed in the decision by this court *In the Matter of Pace*, Case No. 3–80–0209 (Unrep.1980) 2 Ohio District Court Review, Vol. 2, page 39,

"The fact that Respondent ceased all collection efforts, . . . immediately upon receiving the official notice is crucial. The drastic nature of punishment by contempt of court orders dictates that such judicial powers be used only in clear and urgent instances; and, such orders should always be limited to the least possible exercise of power adequate to the end to be accomplished.

"In any event invoking the contempt power is not a device to be used by litigants for redress for personal grievances. If the Debtors suffer damages from the

violation of the automatic stay, such a wrong should be litigated and remedied by a civil lawsuit against the tort feasor. In such a context, the telephone notifications might well have put respondent on notice to cease and desist harassing collection efforts."

Even though fine distinctions often accompany such truisms, contempt prosecution is only designed to preserve the power and dignity of the court, and punishment becomes necessary to prevent abuse of the court's orders or an obstruction of its function. If instituted to compel obedience to court orders, it is civil or coercive in nature. As recent as December 8, 1980, the Court of Appeals for the Sixth Circuit teaches that, "Unlike criminal contempt, civil contempt is not designed to be punitive or to vindicate the honor of the court." *See Reed v. Rhodes*, 635 F.2d 556 (6th Cir. 1980).

At the time the instant litigation came on for hearing, the Bank was no longer in violation of the automatic stay, having returned the vehicle.

Without laboring further the contempt aspects of the clear violation of the court's jurisdiction over the debtors' estate, the tort aspects are not equivocal. The provisions of 11 U.S.C. § 362(a) and 11 U.S.C. § 1306(b) do not require actual notice to be effective, thereby adopting encrusted doctrines. Classic case law may be found in *Mueller v. Nugent*, 184 U.S. 1, 14, 22 S.Ct. 269, 274, 46 L.Ed. 405 (1902) that, "It is as true of the present law as it was of that of 1867, that the filing of the petition (in bankruptcy) is a *caveat* to all the world, and in effect an attachment and injunction."

In the same vein, the United States Court of Appeals for the Sixth Circuit (in a similar context) has succinctly put this ancient principle in different semantics worthy of repeating, as follows:

"Upon filing a petition under Chapter XII, all of the property of the debtor is brought within the jurisdiction of the Bankruptcy Court which jurisdiction is paramount and exclusive and thereafter no action taken in any other court can affect the proceedings in the Bankruptcy Court. Since the judgment of the state court of July 26, 1943, is the sole foundation for claimant Potts' second claim, *the judgment being void, the claim is void* and, likewise, the whole decree of the state court." *In re Potts*, 142 F.2d 883, 888 (1944) [emphasis added].

Assuming *arguendo*, that there was a "peaceful repossession" under the provisions of the Uniform Commercial Code as adopted in Ohio, the violation of the automatic stay cannot be gainsaid. Such illegal actions are void and the violator assumes and suffers all consequences and damages therefrom.

Seizing the vehicle (even in a peaceful seizing) clearly constituted a trespass to personal property and the Debtor was injured in his title and possession. Either actual or constructive possession gives rise to such a trespass. The property was then *in custodia legis* and the Debtor by operation of statute was entitled to peaceful possession. The trespass was a violation of court jurisdiction (and subject to contempt proceedings if not returned upon actual notice) and possession was legally that of the Debtor. 11 U.S.C. § 541, expressly made applicable to Chapter 13 cases by 11 U.S.C. § 103(a) and 11 U.S.C. § 1306(b), nullifies the effect of 11 U.S.C. § 521(3), thereby providing in pertinent part, that a debtor shall remain in possession of all property of the estate except as provided in a confirmed plan or order confirming a plan.

If the court had been required to order redelivery, such a trespass would require all necessary remedies, including sanctions by the Court.

Without dwelling upon the obvious, we note that, "the actual cost of the thing injured or destroyed is not always the measure of damages in cases of trespasses to personalty. The plaintiff may also recover compensation for all incidental damages which are the natural and proximate result of the act charged; in other words, the whole loss sustained is to be taken into view, and this depends on the uses of the personalty in question, its profits, the particular time when the injury was done, and the benefits or advantages lost thereby." *75 Am.Jur.2d Trespass § 50 (1974)*.

Further, "It is the rule in Ohio that in an action where exemplary or punitive damages are recoverable, provocation or the fact that the defendant acted without evil motive, or in good faith, may be shown in mitigation of damages." *16 O.Jur.2d Damages § 168 (1971).*

Looking to the specific case precedents cited in behalf of the parties, this court can concur at least in part with all of the conclusions but must differ somewhat as to the rationalization as to when contempt sanctions become operative.

Under the foregoing outline and approach, it is the opinion of this court that the analysis of contempt of court sanctions in *Abt* is too constricting, as it pertains to the failure to return the vehicle pending a court adjudication of the trespass as to both the debtor's rights and the court's exclusive jurisdiction over the estate. In *MacDonald*, the court found the repossession not to be malicious, willful or wanton; hence, contempt sanctions would not be imposed by this court, although there is a concurrence that prior actual notice to the repossessor imposed a duty to check court records before the physical trespass occurred to avoid imposition of a judgment for damages. Likewise, the results in *Womack* comport favorably to the conclusions *instanter*, although it is doubted that the contempt power was therein the strict *modus operandi.*

Actual notice is a prerequisite of contempt sanctions; but, constructive notice is sufficient both to protect and preserve the court jurisdiction and to give rise to an action in trespass.

Unfortunately, mitigating factors and lack of proof of all elements of all implicit damages for the trespass which occurred create some confusion as to a mature resolution of these transgressions. This court cannot be oblivious to the equities and position of the Bank which is operating under very stringent standards imposed by a debtor-oriented statute. We are constrained to note that the Debtor had been operating the vehicle without proper insurance protecting the secured party and that he had previously been in default before the most recent delinquency of two months.

Accordingly, damages should be limited strictly to litigation expenses and for the loss of use of the vehicle between the date of renewal of the insurance coverage and the date of redelivery to the possession of Caserta. The attorney's fee for pretrial services is set in the amount of $150.00 and for the trial in the amount of $250.00. Since there was no evidence adduced as to the monetary damages for loss of use, the Debtor will be afforded a credit on the balance due under the security agreement for the amount of the contract interest accruing for one month and the claim of the Bank reduced accordingly.

*ORDERED, ADJUDGED AND DECREED* that Louis B. Caserta recover judgment against The Springfield Bank in the amount of $400.00, plus a credit for the amount of contract interest for one month on the balance owed in the amount of $11,564.00.

It is further *ORDERED* that no contempt of court sanctions be imposed as and for violating the automatic stay.

It is further *ORDERED* that punitive damages are not applicable under the facts.