**In the Matter of Stephen D. THACKER, Judy A. Thacker, Debtors.**

**Stephen THACKER, Plaintiff,**

**v.**

**James ETTER, Defendant.**

Bankruptcy No. 1–82–01474.
Adv. No. 1–82–0339.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Nov. 30, 1982.

Ronald L. Burdge, Franklin, Ohio, for plaintiff.

G. David Yaros, Middletown, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

At Cincinnati, in said District, on November 24, 1982:

This matter is before the Court upon the Complaint of Stephen D. Thacker alleging violation of the automatic stay under 11 U.S.C. § 362 by defendant James Etter. A trial on the merits was held on November 15, 1982. Defendant Etter failed to appear, but was represented by counsel, Mr. G. David Yaros. Pursuant to the testimony and exhibits presented at the trial, the Court makes the following Findings of Fact, Opinion and Conclusions of Law:

### Findings of Fact

1. On March 26, 1982 a judgment was entered against Stephen and Judy Thacker for $3750.00 in favor of James Etter, by the Court of Common Pleas for Butler County in Case No. CV81–05–0435. (Plaintiff's Ex. 2).

2. The Thackers failed to pay the judgment referred to above, and on April 2, 1982 counsel for Etter instituted proceedings to garnish Mr. Thacker's wages. (Plaintiff's Ex. 12 and 13). In order to avoid the garnishment, Thacker voluntarily paid the amount required under Ohio law. (Plaintiff's Ex. 15).

3. Thacker received another notice of garnishment, dated May 6, 1982. (Plaintiff's Ex. 16). According to his testimony, Thacker thereafter directed his attorney, Mr. Ronald Burdge, to file a Chapter 7 Bankruptcy Petition in this Court on behalf of Thacker and his wife. According to Court records, that petition was filed on May 25, 1982.

4. On May 25 Mr. Burdge telephoned Mr. G. David Yaros, attorney for Etter, at his Middletown, Ohio office to inform him that the Thackers had filed a bankruptcy petition. Yaros testified that he later received a telephone message conveying that information to him. He further testified that he is associated with the firm of Theodore Repper, Jr. Co. L.P.A. in Middletown in an "of counsel" capacity, and that he spends one day a week in that office. He also maintains an office at 502 2nd National Building, Cincinnati, Ohio.

5. On May 26, 1982 Burdge sent a letter to attorney Theodore Repper in Middletown which reads as follows:

> "Please be advised that Mr. & Mrs. Thacker filed bankruptcy in Federal Court in Cincinnati on May 25, 1982, being Case No. 1–82–01474.
>
> I trust you will not proceed with garnishment."

Yaros admitted that he reviewed this letter on or about May 28, 1982.

6. On May 28, 1982 and again on June 4, 1982 Yaros contacted Ms. Gail Williams, Master Calendar Clerk for the Court, in an attempt to verify the filing of the Thackers' bankruptcy petition. Ms. Williams informed him that she could not locate the petition, but given the backlog of cases in the clerk's office, she could not confirm that it had not been filed.

7. Without attempting once again to verify the filing of the petition, on June 11, 1982 Yaros directed another attorney employed by Theodore Repper, Jr. Co., L.P.A. to prepare the appropriate papers for garnishing Thacker's wages. That garnishment proceeding was filed on June 16, 1982, apparently without any further attempt being made to determine whether the Thackers had in fact filed a bankruptcy petition. (Plaintiff's Ex. 3).

8. According to the Court file, on June 10, 1982 a notice of the meeting of creditors pursuant to Section 341 of the Bankruptcy Code was mailed to all creditors listed on Schedule A. Etter is among those listed on that schedule.

9. Mr. Thacker first learned that his wages had been garnished when he received his paycheck from Armco Steel Corporation indicating a garnishee deduction of $101.40. Burdge wrote a letter addressed to both Repper and Yaros requesting that the garnished money be returned to Thacker, noting the pendency of the Thacker bankruptcy petition. (Plaintiff's Ex. 6) This was followed by another letter from Burdge on July 9, which memorializes an agreement between counsel to endorse the Court of Common Pleas garnishment check over to Thacker. (Plaintiff's Ex. 7) After at least two additional inquiries, Burdge received the check on October 19, 1982. However, the check had not been endorsed. (Plaintiff's Exhs. 8, 9, 10, & 11).

10. No explanation was offered for not attempting to verify the filing of Thacker's bankruptcy petition prior to pursuing the June 16, 1982 garnishment proceeding; nor was any explanation given as to the cause for delay in transmitting the garnishment check; nor was the failure to endorse that check explained. Indeed, no evidence was presented by the defendant at trial.

## OPINION

■ The evidence in this case stands undisputed that garnishment proceedings were instituted by the defendant Etter against Thacker after the Thackers filed their bankruptcy petition in this Court. Defendant contends that the garnishment did not violate the automatic stay, because defendants did not receive the Court's notice of the bankruptcy until after June 16. Putting aside, for the moment, the facts before the Court, this contention is simply unsupportable under the statute and settled case law. The rule was succinctly stated in *In Re Miller,* 10 B.R. 778, 4 C.B.C.2d 530, 532 (Bkrtcy.Md., 1981):

"an action taken in violation of the stay is void *ab initio* whether it is taken with knowledge of the stay or without."

*See also, In Re Eisenberg,* 7 B.R. 683, 3 C.B.C.2d 440, 447 (Bkrtcy.E.D.N.Y., 1980); *In Re Edwards,* 2 C.B.C.2d 1027, 1029 (Bkrtcy.M.D.Ala., 1980); 2 *Collier on Bankruptcy,* ¶ 362.03 at pg. 362–26 (15th Ed., 1979).

■ Having determined that defendant violated the stay, the Court must determine the nature and extent of the remedy available to the plaintiff. Plaintiff's complaint is cast as an action for compensatory and punitive damages, rather than a motion for contempt. Plaintiff cites *The Springfield Bank v. Caserta,* 10 B.R. 57 (Bkrtcy.S.D., Ohio, 1981) as authority for the proposition that § 362 creates a private cause of action for damages to remedy violations of the stay.

To the extent that the holding of *Springfield Bank* is in accord with plaintiff's contention, we respectfully decline to follow that decision. The Supreme Court of the United States has set forth specific guidelines for implying a private cause of action from a statute which does not expressly provide one. One of the best summations of those guidelines is set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted, . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy, or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for plaintiff? . . . And, finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?"

While the provisions of § 362 may well meet the fourth, and possibly the first, of the above-cited prerequisites for implying a private cause of action, it fails to meet both the second and third prerequisites. This Court has been unable to find any indication in the legislative history of the Code that Congress intended to create a private cause of action in damages for violation of the automatic stay under § 362; nor can such intent be inferred from the language of the statute or the statutory structure. Under such circumstances, ". . . the essential predicate for implication of a private remedy does not exist." *Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981); *see also, California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981).

As to the third prerequisite, the Court finds that, ". . . the remedy sought would not aid the primary congressional goal . . . " in enacting § 362. *Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2090–2091, 45 L.Ed.2d 26 (1975). As the legislative history indicates,

the automatic stay was intended to provide debtors with a breathing spell from the pressure of creditors, and to protect creditors from preferential treatment of other creditors. The statute provides protection from the hardship which creditors might incur from the stay by allowing for relief therefrom under certain circumstances. H.Rep. No. 95–595, 95th Cong., 1st Sess. 174; 340 (1977); S.Rep. No. 95–989, 95th Cong., 1st Sess. 54, (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative scheme for balancing the competing interests of all parties in a bankruptcy proceeding was comprehensively and carefully drawn. Had Congress intended to provide a cause of action for damages under § 362, it had ample opportunity to do so. Congress did not, and this Court should not. This principle was clearly enunciated in *Northwest Airlines v. Transport Workers,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981):

"The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs."

While no private cause of action is available to the plaintiff under § 362, he is not without a remedy under that provision. The stay imposed under § 362 is comparable to an automatic injunction. Violations of that statutory injunction can be brought before the Court by way of a motion for civil or criminal contempt, as is true of any judicially-imposed injunctive order. In order to prevail on such a motion for civil contempt [1] the moving party need only show that the respondent was armed with sufficient facts to give a reasonable man constructive knowledge that the stay was in effect, and that notwithstanding such knowledge, actions were taken in violation of the stay. The measure of relief to the

---

**1.** Since the obvious purpose of plaintiff's complaint is "to coerce compliance or compensate for injuries suffered", rather than, "to punish, by either fine or imprisonment with a view toward vindicating governmental authority", the court will treat plaintiff's complaint as a motion for civil rather than criminal contempt.

Because of the compensatory goal of civil contempt, a punitive award would be inappropriate. *In Re Reed,* 11 B.R. 258, 4 C.B.C.2d 736, 745, 757 (Bkrtcy., D.Utah, 1981); *See also, Reed v. Rhodes,* 635 F.2d 556, 558 (6th Cir., 1981).

movant consists of the amount of actual damages he has sustained as demonstrated by credible evidence, as well as an award of attorneys fees. *In Re Reed,* 11 B.R. 258, 4 C.B.C.2d 736 (Bkrtcy.D.Utah, 1981) (Mabey, J.); *See also, In Re Edwards,* 2 C.B.C.2d 1027 (Bkrtcy.M.D.Ala., 1980); *In Re Eisenberg,* 7 B.R. 683, 3 C.B.C.2d 440 (Bkrtcy.E.D.N.Y., 1980).

█ Under this standard, the Court has little difficulty in holding the defendant in this case in civil contempt. Burdge's May 26, 1982 letter to Yaros states in unequivocal terms that the Thackers filed a bankruptcy petition on May 25, 1982, and that such petition was assigned Case No. 1–82–01474. Yaros does not assert that he was unaware of the significance of this filing under § 362. His suggestion that prior dealings with Burdge justified his disregard of the May 26 letter cannot be accepted, particularly in light of Burdge's citation of a case number. Given the contents of that letter, he was obliged to definitely ascertain for himself whether the petition had been filed, and not merely rely upon an overburdened employee of the clerk's office to do so for him. Had he reviewed the Court's docket on June 11, 1982 when he directed that the subject garnishment be drafted, he almost certainly would have learned of the filing. Clear and convincing evidence establishes that defendant had constructive knowledge of the stay on May 26, but chose to ignore it on June 16 by filing the garnishment. Such conduct certainly falls within the bounds of civil contempt.

█ Even if Burdge had never provided Yaros with constructive knowledge, no plausible excuse exists for failing to promptly endorse and surrender the garnishment check after reviewing this Court's notice of the stay. The failure to do so constitutes a continuing contempt. *In Re Miller,* 10 B.R. 778, 4 C.B.C.2d 530, 532 (Bkrtcy.Md., 1981).

█ Based on the above stated findings and opinion, this Court hereby awards plaintiff the sum of $101.40 plus interest at the rate of 21 percent per annum from June 16, 1982, as well as costs. The Court has reviewed counsel for the plaintiff's application for attorney's fees filed on November 15, 1982, and awards $997.50 as fair remuneration for his services in this action. Defendant's objections to awarding fees on the basis of this application are without merit. *See, In Re Reed, supra,* 11 B.R. 258, 4 C.B.C.2d at 758.

## Conclusions of Law

1. This Court has jurisdiction over this proceeding under 11 U.S.C. § 1471(a).

2. No private cause of action for damages exists under 11 U.S.C. § 362.

3. Defendant had constructive knowledge of the filing of the Thacker's bankruptcy petition and the existence of an automatic stay as of May 26, 1982, and accordingly his violation of that stay by the filing of a garnishment proceeding in state court on June 16, 1982, as well as his continued failure to turn over the proceeds of such garnishment thereafter, constitute civil contempt.

4. IT IS THEREFORE ORDERED:

a. That the defendant be held in civil contempt for its violation of the stay imposed by § 362 of the Bankruptcy Code;

b. That the defendant pay to plaintiff the sum of $101.40, plus interest at the rate of 21 percent per annum from June 16, 1982;

c. That defendant pay to plaintiff the sum of $997.50 as attorney fees.