**Millard E. VAN HOOSE, Virginia Van Hoose 3105 Seymore St-Kennard, Cable, Ohio 43009, Plaintiffs,**

v.

**Margaret Ann VAN HOOSE Lot # 190, Marysville Trailer Court, Marysville, Ohio 43040 Defendant.**

**In the Matter of Millard E. VAN HOOSE, Virginia Van Hoose, Debtors.**

**Bankruptcy No. 3–81–02096. Adv. No. (A).**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 23, 1983.

David E. Larson, Dayton, Ohio, for plaintiffs/debtors.

Gerald L. Anderson, Mechanicsburg, Ohio, for defendant.

George W. Ledford, Englewood, Ohio, trustee.

11. *See* note 7 *supra.*

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the court upon Complaint filed on 22 February 1982 by the Debtor herein, Millard Van Hoose. The Complaint alleges his ex-wife Margaret, the Defendant herein, violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362. Defendant's answer denies any violation of the automatic stay. At a prior hearing before the Court of Common Pleas, Champaign County, Ohio, which involved the same parties present in the instant case, there was a deferral of any findings until this Court resolved the issue whether certain obligations owed by Debtor under the terms of a divorce decree were dischargeable in bankruptcy pursuant to 11 U.S.C. § 1328.

Trial on the Complaint was set for 14 April 1982. The parties requested and were granted a continuance in an attempt to negotiate a settlement and, failing that, to prepare a stipulation of agreed facts and memoranda of law. The parties did not succeed in settling, waived pretrial conference and hearing, and submitted the matter to the Court on a joint stipulation of facts, an affidavit of Defendant, and briefs. The following decision is based on the stipulations including Defendant's affidavit, legal briefs, and stipulated exhibits setting forth the proceedings from the Court of Common Pleas in Champaign County. The Court also takes judicial notice of Debtor's Chapter 13 case record (No. 3–81–02096) and of the proceedings in *Household Finance Corporation v. Millard and Margaret Van Hoose* (No. 3–81–0205).

### STATEMENT OF FACTS

Millard E. Van Hoose, Plaintiff and Debtor herein, and Margaret Ann Van Hoose, Defendant, were granted a decree of divorce on 4 May 1978 in the Court of Common Pleas, Champaign County, Ohio. The decree dissolved their marriage of ten and a half years which had produced 3 minor issue. The divorce decree granted custody of the 3 children to Margaret and ordered Millard to pay $45.00 per week plus poundage and all the children's medical expenses. The decree awarded Margaret "temporary alimony" of $15.00 per week along with payment of her rent and utilities until she returned to work from temporary sick leave. Margaret also received all personal property of the marriage which, pertinent to this proceeding, included certain household goods purchased and financed through Household Finance Corporation (HFC). Millard and Margaret comade the note to HFC. Finally, the divorce decree ordered Millard to pay all "debts of the marriage" (including the joint debt owed to HFC) and to hold Margaret harmless therefrom.

Millard and his present wife filed their joint petition for relief under Chapter 13 on 28 July 1981. Debtors duly scheduled HFC as an unsecured creditor (its security interest is in certain of Debtors' household goods exempted pursuant to 11 U.S.C. § 522(d) and O.R.C. § 2329.66(A)(4)(b)). The parties stipulated the amount due to HFC as $1,333.63, consistent with HFC's properly filed proof of claim. The Court confirmed Debtors' plan on 8 September 1981, which provided, in pertinent part, for a distribution of approximately 25% to unsecured creditors.

Margaret received notice of his joint Chapter 13 Petition on 1 September 1981. On 21 September 1981 Millard's attorney responded to a phone call from Margaret with a letter advising her that because of Millard's Chapter 13 filing, some of the creditors to whom they were jointly liable may attempt to force payment by her on some of their comade debts. (*Note* 11 U.S.C. § 1301). He further suggested if she was forced to pay on such debts she should submit a proof of claim to the Chapter 13 Trustee, who would likely reimburse her for 5% of the amount claimed. The letter closed by admonishing her not to seek satisfaction from Millard personally. Debtor's attorney warned, in pertinent part, "If you do attempt to collect anything from

Millard, you may be held in contempt of Federal Bankruptcy Court."

On 4 November 1981, HFC instituted an adversarial proceeding to obtain relief from the codebtor stay pursuant to 11 U.S.C. § 1301(c). Margaret was duly served as a named Defendant; however, she filed no answer nor did she appear at the hearing. An agreed order, dated 18 November 1981, granted relief from the stay. HFC instituted collection efforts against Margaret to collect the portion of the debt Millard did not propose to pay under his Chapter 13 Plan. As a result of these efforts, Margaret agreed to pay HFC $40.00 per month for 25 months.

Prior to 10 February 1982 and presumably without the advice of counsel, Margaret wrote a letter to the Champaign County Common Pleas Court Judge who had presided over the divorce case. The letter complained that she was having to pay on debts (specifically that owing to HFC) on which she was to have been held harmless under the divorce decree. The Common Pleas Court *sua sponte* set the matter for hearing on 10 March 1982 to discuss the question of responsibility for payment of "debts of the marriage" and the effect of Millard's Petition in bankruptcy. The hearing resulted in a journal entry, dated 5 April 1982, withholding further action by the Common Pleas Court during the pendency of the Bankruptcy Court proceedings and Millard was directed to pay the court costs. In *dicta,* the state court suggested that its order in the divorce decree that Margaret be held harmless on certain "debts of the marriage" was "in the nature of an alimony order." The Court also notes that, at this hearing, Margaret attempted to withdraw her notification to the state court regarding the payments to HFC.

## DECISION

In their briefs, the parties devoted extensive argument to the issue of whether the "hold harmless" provision of the divorce decree and subsequent debt owing to Margaret was in the nature of alimony, maintenance, or support and thus dischargeable

under 11 U.S.C. § 1328(a)(2). This discussion was apparently premised on the assumption that the Common Pleas Court hearing on the question of responsibility for payment of certain debts of the marriage and the resulting Journal Entry, which deferred to the Bankruptcy Court for a determination of the dischargeability of the debt, sufficed to bring the issue before the Bankruptcy Court for decision.

Initially the Court notes that issues of nondischargeability of alimony, maintenance, or support are properly justiciable in a Chapter 13 proceeding. See the "Emergency Model Rule for Operation of the Bankruptcy Court System," Rule (d)(3)(A). However, this Court is constrained to hold that the issue of dischargeability of the debt of the marriage owed by Millard and the sub-issue of the nature of that debt, though justiciable, have not been properly brought before the court in this case.

Obviously the filing of a complaint with the Clerk of the Bankruptcy Court is proper pleading form to raise issues of dischargeability. B.R.P. 701(7) and 703. Bankruptcy Rules of Procedure 13–407 provides that either a debtor or creditor may initiate such an action at any time, even after the case is closed. The only issue raised by complaint *instanter* is in regard to an alleged violation of the automatic stay.

11 U.S.C. § 362(d)(1) and (f) provide for termination of the automatic stay on the request of a party in interest for cause or where irreparable damage will result. Thus, Margaret could have, at any time since the filing of Debtor's Petition, requested that the stay be lifted so that she would be free to use the state court's enforcement power to exact payment from Millard. Of necessity, a decision of whether to grant relief from the stay would have required a determination of whether the debt was nondischargeable as alimony, maintenance, or support. *In re Sak,* 21 B.R. 305 (E.D.N.Y.1982).

11 U.S.C. § 1301(c) provides an opportunity to be heard from all interested parties at a proceeding to determine whether the codebtor stay should be removed. Thus, the

nature of the debt and the issue of dischargeability could properly have been litigated in this Court when HFC sought removal of the codebtor stay. The Court specifically notes that Margaret duly received notice of the proceeding to remove the codebtor stay, but apparently chose not to contest the matter at that time.

Finally, 11 U.S.C. § 1324 gives any party in interest an opportunity to object to confirmation of the debtor's Chapter 13 Plan. Although there is no express provision in the Code requiring that a plan provide for 100% payment of any alimony, maintenance, or support (11 U.S.C. § 1322(a)), a strong argument could have been made that Millard's plan should not have been confirmed, given its failure to provide for full payment of a potentially nondischargeable debt for alimony, maintenance, or support. Under the *ratio decidendi* of this Court's opinion in *Matter of Gaston,* 25 B.R. 571 (Bkrtcy.1982), (*see also Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982) as cited therein), it may constitute "questionable conduct" for a debtor to seek and obtain a discharge under Chapter 13 of a debt otherwise nondischargeable, particularly if payments on the debt as "contracted" would not have been completed during the term of the plan, and if the debtor is capable of making the payments as originally contemplated. 11 U.S.C. § 1328(a)(2) declares any debt in the nature of alimony, maintenance, or support is nondischargeable. Thus, the inclusion by Millard of a potentially nondischargeable debt in a plan providing for payment of 25% to creditors may well constitute "questionable conduct." Continuing with the broad principles established in *Gaston* and *Memphis Bank,* the Court, in the interest of justice, may require full payment of debt incurred by such "questionable conduct," or may deny confirmation of a debtor's plan entirely. Such an approach is consistent with the historical underpinnings of the Bankruptcy Code. *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904) expresses the concern that the law not be a "means of avoiding the obligation ... devolved upon the husband to support the wife." Also,

one of the other main purposes of the bankruptcy law is to provide a fresh start to the "honest" debtor. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Thus, the hearing to confirm Millard's Chapter 13 plan, of which Margaret also received notice, would have been a further opportunity to bring the issue of the nature of the debts and their potential dischargeability before the court. As indicated earlier, the instant Complaint does properly raise the issue of whether Margaret violated the automatic stay provisions of 11 U.S.C. § 362 by writing a letter to the state court judge who granted her divorce wherein she complained that she was paying on debts on which she was to have been "held harmless" under the terms of the divorce decree. Further, if the automatic stay has been violated, the issue of whether contempt sanctions are warranted against Margaret must, of necessity, be resolved.

Defendant's brief contends she had a "right" to complain to the state court regardless of the effect of Millard's Petition in bankruptcy. This contention will serve to illustrate the inherent conflict between the power of the states over domestic relations matters and the power of the federal courts in bankruptcy cases. However, the resolution of the conflict is much more complicated than has been suggested. The ability of the states to regulate marriage is well documented, both historically and constitutionally. *Barber v. Barber,* 62 U.S. 582, 16 L.Ed. 226 (1858); *Maynard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1887); *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904). Further, "traditional abstention from divorce court litigation in federal courts has been previously discussed by this Court and need not now be further labored, despite the apparently all-inclusive statutory jurisdictional grant to bankruptcy courts." *In the Matter of Stamper,* 17 B.R. 216 (Bkrtcy.1982). See also: *Matter of Sturgell,* 7 B.R. 59 (Bkrtcy. 1980); *Tope v. Tope,* 7 B.R. 422 (Bkrtcy. 1980); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1978); *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952).

However, this principle of federalism must be tempered by the clear mandates of the Bankruptcy Code to protect debtors during the pendency of their case and to assure them their "fresh start."

The automatic stay provision in 11 U.S.C. § 362 is a fundamental protection for any party claiming an interest in a debtor's estate. In the case at hand, the pertinent statutory provisions include:

§ 362. AUTOMATIC STAY.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ·

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay . . .

(2) under subsection (a) of this section, of the collection of *alimony, maintenance, or support* from property that is *not property of the estate* . . . . [Emphasis added]

The breadth of this Court's automatic stay empowers this Court with considerable discretion to limit the number of forums a debtor must appear in to resolve his financial affairs and problems. It is clear that Margaret is precluded from any action to collect on the debt of the marriage unless it is first determined to be alimony, maintenance, or support and, second, that her efforts at collection were not directed at property "property of the estate."

■ The Champaign County Common Pleas Court issued *dicta* in a Journal Entry stating that the obligation of Millard to hold Margaret harmless on certain debts was "in the nature of alimony." The language of the divorce decree itself, however, is ambiguous as to the parties' intent regarding the hold harmless provision. Generally, the determination whether a debt is alimony, maintenance, or support in the context of a bankruptcy case must be made under federal law. *Stamper* articulated the principle that the "language of the state court decree is not conclusive as to whether ordered payments to a spouse constitute alimony." However, although the Code clearly requires bankruptcy law standards be used to ascertain the nature of a debt for purposes of the automatic stay, it is equally clear that such determinations cannot be made in a vacuum. State court findings may not be conclusive regarding classifications of debts, but they should be accorded a considerable probative value. Otherwise, the bankruptcy court would take on the role of an alternate domestic relations court, deciding issues *de novo* without the expertise of the traditional domestic law forum. The balance to be struck between the two forums is a delicate one.

■ State courts have historically exercised jurisdiction in determining whether there should be financial duty owing to an ex-spouse or any children from a dissolved marriage and any amounts owing pursuant to that obligation. *Matter of Parrish,* 29 B.R. 869 (Bkrtcy.1983). Those issues are not collaterally determinable by the bankruptcy court. However, once a financial duty is established and one of the parties raises the issue in bankruptcy court, it is incumbent upon the bankruptcy courts to ascertain the nature of the debt under federal law. This becomes important, for example, in ascertaining the extent of the automatic stay under § 362. In this context, this Court held in *Stamper* that the stay against actions to collect from a debtor is operative until the bankruptcy court resolves whether a particular debt is alimony, maintenance, or support and, hence, dischargeable even if the debt appears to be *prima facie* excepted under § 362(b)(2). There will of course be situations where the nature of the debt is patently clear, and for the Bankruptcy Court to do anything but affirm a divorce decree's designation of a debt would work an injustice. (For just such a situation, see this Court's opinion in *Parrish* ). Thus, where there is no doubt or ambiguity from a state court decree that a debt is alimony, maintenance, or support, there is no need for any contrary interpretation by this Court. Such a common sense

principle is not inconsistent with the requirement of federal review of such financial duties articulated in *Stamper.* Although the role of the Bankruptcy Court may be perfunctory when it is presented with a clear case of a debt constituting alimony, maintenance, or support, its judicial processes may not be bypassed by a creditor assuming he or she may proceed with state court collection efforts because a debt is apparently "clearly" one excepted under § 362(b). The Code does not contemplate *ex parte* "judicial" resolution. As applied to the facts of this case, even if the debt owed by Millard to Margaret was "clearly" in the nature of alimony, maintenance, or support (an issue not necessary to reach *instanter*), Margaret could not so presume and proceed to collect in state court without first providing an opportunity for *bona fide* objection. The interface between the forums is more correctly stated as state court remedies, allowed under § 362(b)(2), may properly be invoked in the state forum only upon a determination (even if only *pro forma*) that the debt is alimony, maintenance, or support under federal standards.

Given the applicability of the stay to the fact at hand, did the action of Margaret rise to a violation of that stay? In this Court's opinion in *Stamper,* a nondebtor wife was precluded from seeking enforcement of the terms of a dissolution decree in state court prior to a determination by this Court that the debt owed was an exception to the automatic stay. The wife was also found in contempt of the bankruptcy court for filing a complaint in state court seeking a contempt order against her ex-husband for nonpayment of support obligations. Hence, the issue is whether a letter to the same court complaining of a similar failure to pay is also a stay violation.

Technically, it would appear the stay has been violated. The language of § 362 is, of necessity, very broad to afford debtors protection from creditors during their attempts at a reorganization under Chapter 13. It is clear Margaret also had both notice and actual knowledge of the stay. She received notification from this Court re-

garding Millard's bankruptcy proceedings and, furthermore, was instructed by Millard's attorney that any attempts on her part to collect on the debt of the marriage would be urged as violative of the stay. As has been discussed *supra,* she had an opportunity to litigate this very matter at the hearing for removal of the codebtor stay and at the hearing on confirmation of debtor's Plan. Thus, her "act" of writing to the state court judge was apparently done with knowledge of its ramifications and this Court is constrained to find that Defendant acted in the face of the automatic stay.

However, a potential finding of a violation is not tantamount to a finding of contempt. A common thread in this and other court's decisions is that "[contempt] orders should always be limited to the least possible exercise of power adequate to the end to be accomplished." *Matter of Pace,* Case No. 3–80–0209 (1980); *Springfield Bank v. Casserta,* 10 B.R. 57 (Bkrtcy.1981); *In the Matter of Jones,* 27 B.R. 374 (1983); *Reed v. Rhodes,* 635 F.2d 556 (6th Cir.1980). Thus, even though there may have been a technical violation of the stay, this Court finds that Margaret's conduct did not constitute misconduct so as to warrant a sanction of contempt and an award of attorney's fees because no action against Debtor was taken by the state court. She apparently acted without the advice of counsel in writing to the state court judge and further attempted to withdraw that notification at the subsequent hearing on the debt. *Stamper* is distinguishable because there the ex-wife initiated a court action with a complaint and sought immediate incarceration of the debtor. Here, there is no indication the ex-wife did little more than express a concern that she was having to pay certain debts from which she was relieved by divorce settlement. These mitigating factors, along with the decision of the Common Pleas Court judge to refuse to exercise jurisdiction over the non-payment issue before him during the pendency of Millard's bankruptcy or until the debts were declared to be alimony, maintenance, or support, lead this Court to conclude a finding of contempt is not warranted.