**In re John William LELAK, Jr. aka, John W. Lelak, Debtor.**

**M. Angela LELAK, Plaintiff,**

**v.**

**John William LELAK aka, John W. Lelak, Defendant.**

**Bankruptcy No. 3–83–01455. Adv. No. 3–83–0757.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 9, 1984.

Richard L. Buchanan, Dayton, Ohio, for plaintiff.

Richard S. Sutton, Dayton, Ohio, for defendant.

Herbert Ernst, Jr., Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is Plaintiff's complaint filed on October 18, 1983,[1] to determine the dischargeability of her claim for $10,363 in "retirement benefits" against the defendant debtor arising out of their divorce Judgment and Decree.

From the state court Decision on January 4, 1983, the substance of the "retirement benefits" as pleaded is made more definite, as follows:

"Defendant has deposited approximately $20,252.42 in his State Teacher's Retirement System account as a result of his employment at Sinclair College in Dayton, Ohio. This balance is as of June 30, 1982. In addition, as a result of his employment at Eastway, he accumulated about $3100 in retirement benefits, of which only $600 remain, $2500 having been withdrawn 'to pay joint liabilities.'

"The wife's retirement fund contains $87.50.

"There is no evidence that any of these retirement benefits were earned at any time except during the parties' marriage. The court finds that these retirement funds are marital assets."

On page 12 of the state court Decision, the court further found as follows:

"The decree shall order the defendant not to withdraw any retirement benefits from either account without ten days written notice to the plaintiff."

From the state court Decree on January 31, 1983, the type of "retirement benefits" at issue is further clarified, as follows:

"As to the retirement benefits of the parties, the court is mindful that they cannot be withdrawn by either party at the present time so long as the parties are employed. The Court finds that the total retirement of both parties is Twenty Thousand Nine Hundred Thirty-Nine Dollars ($20,939.00) which, for simplicity's sake is rounded off to $20,900. Plaintiff shall keep the $87.00 in her retirement account and shall be entitled to receive from the Defendant the sum of Ten Thousand Three Hundred Sixty-Three Dollars ($10,363.00). The Defendant shall retain the balance. The Defendant shall pay the sum of $10,363.00 to the Plaintiff commencing with the first payday after the closing of the house in the amount of Fifty Dollars ($50.00) per week, unless Plaintiff has been paid in full by that time."

The parties agreed at a pretrial conference to submit this matter to the court on stipulations and legal memoranda, the last of which was filed on February 15, 1984.

As joint exhibits, the Decision of the state court on January 4, 1983; the Final Decree and Judgment of Divorce on January 31, 1983, the order of the state court on

---

1. Debtor's attorney claimed that "as a matter of law, the complaint was not timely filed." Although September 5, 1983, was fixed as the last day to file Objections to debtor's discharge, pursuant to an order of the Court, Plaintiff filed an Application for leave to file Complaint on October 11, 1983. In an order filed October 14, 1983, that leave was granted. Thus, debtor's motion to dismiss for late filing is denied.

post-decree motion on February 11, 1983; and the order of the state court on the post-decree motion on April 20, 1983, have all been considered. The parties have stipulated to the jurisdiction of the Bankruptcy Court.[2]

Plaintiff Angela and Defendant-Debtor John were married from August 19, 1967, until January 31, 1983, when they were divorced pursuant to a Final Decree and Judgment of Divorce issued by the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations. At the time of that divorce, Angela was earning $216 per week and John was earning $606.03 per week from two jobs. Angela was awarded custody of two minor children.

In the January 4, 1983, Decision in the Lelak divorce proceedings (Case No. 82–DR–1530), the state court on p. 2 specifically found that "the parties are in dire financial straits.... Neither party will be able to live in the style to which each of them likes to be accustomed until their financial problems are rectified, or at least eased."

As to the retirement benefits, the state court wrote on p. 5 of the Decision: "There is no evidence that any of these retirement benefits were earned at any time except during the parties' marriage. The Court finds that these retirement funds are marital assets." Later, on pp. 9–10, it continues, "This accumulation [of retirement benefits], which occurred during the parties' marriage, there being no proof to the contrary, is a marital asset."

The Final Decree dated January 31, 1983, consisted of five pages containing 25 separate "paragraph/orders", each beginning with some appropriate language as "It is further ordered" in capital letters.[3]

The Decree ordered John to pay, as child support, $40 a week for each child until the child is "emancipated," as well as $40 a week in alimony until Angela dies, remarries, or until the expiration of 52 weeks after the sale of the marital residence valued by the state court at $125,000. These premises were sold in June, 1983, thus setting the clock running on the 52 weeks before termination. When the alimony payments are terminated, the child support payments automatically increase to $50 a week per child, pursuant to the Decree. The Decree then specifically detailed that the alimony and child support payments were to be made through the Bureau of Support of Montgomery County. The Decree then ordered the parties to divide their household goods and furnishings as they agreed. As part of this separate "paragraph/order" dividing household goods, Angela's attorney included the above-quoted language. fixing the amount of the retirement benefits, dividing it between the parties and providing for the $50 a week payments.

Subsequently, John and Angela bore out the state court judge's observations of serious financial difficulties, in that both have since filed voluntary Chapter 7 petitions. John filed on June 21, 1983; Angela filed on January 10, 1984, (three months after she instituted this adversary proceeding) in case No. 3–83–00051.

In John's petition, he named Angela as an unsecured creditor on Schedule A–3 for "non-alimony obligations arising from the divorce judgment and decree, incl. retirement & Citicorp" in the amount of $18,050.

2. Although John listed the retirement plan as exempt, there was no claim that the retirement benefits were not part of the estate of the debtor herein. Where such benefits are not included in the estate, *see, e.g., In re Phillips,* 34 B.R. 543 (Bkrtcy., S.D.Ohio 1983), the Bankruptcy Court has no jurisdiction. Since the parties apparently agree that the benefits are part of the estate, presented no evidence to the contrary and stipulated to this Court's jurisdiction, jurisdiction is properly in this Court.

3. In the January 4, 1983, Decision on the Lelak divorce, the responsibility for the preparation of this Final Decree was assigned to counsel for the Plaintiff (Angela) pursuant to Rule 4 of the Common Pleas Court Rules of Montgomery County, effective January 1, 1983. The Final Decree appears on paper clearly printed with the name of the firm representing Angela both in state court and herein. Thus, the actual format of the Decree was fashioned by Angela's attorney.

In his Summary of debts and property, he listed assets of $23,966.42 and debts of $68,590.66.

In Angela's petition, she did not list an interest in the retirement benefits and she stated that no other person holds anything of value in which she has an interest. Further, she denied being a party to any suit pending at the time of filing, although this adversary was pending. Nor did she list her divorce proceedings when asked if she was a party to any suits during the prior year. In her Summary of debts and property, she did list assets of $5692 and debts of $56,703.73, of which amount $33,429.98 was for a mortgage on the marital real estate. In an order signed by the Hon. Ellis W. Kerr, Angela was ordered to appear at a routine meeting of Creditors pursuant to 11 U.S.C. § 341(a) on February 3, 1984. She did not appear and has offered no explanation for not complying with the order.

## DECISION

If the $50 payments from the retirement funds are considered alimony, maintenance, or support, as alleged by Angela, they are not dischargeable per § 523(a)(5); whereas if the payments are considered as a property settlement, as alleged by John, they are dischargeable.

"As often reiterated by court decisions, 'what constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not state law.' " *Stamper v. Stamper*, 17 B.R. 216, 219 (Bkrtcy., S.D. Ohio 1982).

"However, although the Code clearly requires bankruptcy law standards be used to ascertain the nature of a debt for purposes of the automatic stay, it is equally clear that such determinations cannot be made in a vacuum. State court findings may not be conclusive regarding classifications of debts, but they should be accorded a considerable probative value. Otherwise, the bankruptcy court would take on the role of an alternate domestic relations court, deciding issues *de novo* without the expertise of the traditional domestic law forum. The balance to be struck between the two forums is a delicate one."

*Van Hoose v. Van Hoose*, 31 B.R. 332, 336 (Bkrtcy., S.D.Ohio 1983). *See, also, In re Calhoun*, 715 F.2d 1103 (6th Cir.1983).

In the recent *Calhoun* decision, the Sixth Circuit, when dealing with the issue of determining whether an assumption of joint debts was alimony under federal bankruptcy law (and thus dischargeable), wrote at 1109: "We believe that the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts. If they did not, the inquiry ends there." [emphasis in original.] If the court finds that the assumption was intended to provide support, the next inquiry is whether it had the effect of providing necessary support. Finally, the court must determine that the amount of support "is not so excessive that it is manifestly unreasonable under traditional concepts of support." Id. at 1110.

*Calhoun* at 1108 in fn. 7 compiles the several factors used by bankruptcy courts in discerning the actual intentions of the parties and/or the underlying purpose of the state court decree. That footnote reads:

"7. These factors include: the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption."

To recap the relevant facts herein, Angela and John were married for 15 years and have two daughters, ages 12 and 15, who are in Angela's custody. Angela is the

principal of an elementary school, earning $15,390 a year; John is a professor at a community college and holds a second job, earning about $52,000 a year from both jobs. No other information about work skills was presented to the Court, nor were the parties' ages or health.

Turning to the structure and language of the court's decree, the state court's Decision of January 4, 1983, offers insight into its intentions about the retirement benefits. As noted above, that court twice specifically held that the benefits were marital assets. Such a holding leads to the conclusion that the state court merely divided property among the parties, as opposed to providing for Angela's support.

Further, the amount to be paid Angela was derived by computing both parties' benefits and then dividing it equally between the two of them. Such a derivation, with no discussion or consideration of relative financial resources or needs, also leads to the conclusion of a division of property.

After recognizing that the benefits could not presently be withdrawn, the state court ordered that the amount be paid to Angela in installments beginning after the sale of the marital premises. Thus, the court seems to be tailoring the payments to John's ability to pay rather than to Angela's need for support. After the sale of the marital premises, John would be in a better position to pay, but Angela would also be in a comparably better financial position, since the net proceeds from the sale were divided into two equal shares and paid to the parties, pursuant to the state court's Decision at p. 8. Since both John and Angela would be in better financial shape, any possibility that the state court intended to provide additional support for Angela tends, again, to be negated.

Further the court envisioned the possibility that Angela receive early payment of the property division, either in a lump sum or some form of accelerated payments, when it wrote, "unless Plaintiff has been paid in full by that time."

The state court specifically provided for alimony of $40 a week to be paid until Angela "dies, remarries, or until 52 weeks after the sale of the marital premises," and for child support, which automatically increased when alimony payments terminate.

From the above, it must be concluded that the state court envisioned the payments of the retirement benefits as a division of property, and not as alimony, support and/or maintenance.

Apparently, at least for a short time, Angela and her attorney shared this belief, that it was indeed a division of property. Proof of this is seen in the structure of the Final Decree which was drafted by Angela's attorney. As noted above, the payment of these retirement benefits was lumped together into one "paragraph/order" with the division of household goods and furnishings. Considering that the Decree contained 25 separate "paragraph/orders", such positioning becomes telling. Angela's attorney, if he really thought these payments were a form of alimony, could have easily distinguished these payments from the division of household goods by simply adding the words "It is further ordered" as he did 25 other times in the Decree.

Further, that Angela and her attorney believed the payments to be a division of property provides one possible explanation for her not listing the retirement benefits on her Statement when she filed in bankruptcy: if she believed these were a division of property and thus dischargeable, she had no realistic expectation of getting them and thus properly did not list them. To assume that she and her attorney forgot about listing them while simultaneously, actively pursuing this adversary is inconsistent.

This court is thus constrained to hold that the intent of the state court and of the parties was to provide for a division of marital property. According to *Calhoun*, this ends the inquiry; the debt is dischargeable. However, even if it is assumed the intent had been otherwise, these payments do not appear to be in the nature of sup-

port, but rather in the nature of a division of property.

Angela herein contends that these payments were necessary for her support and that the lack of these payments caused, at least in part, her to file in bankruptcy. While facially a powerful argument, it must be remembered that John, too, has filed in bankruptcy and that, in fact, he found it necessary to file a half year *before* Angela. Obviously, he too is in dire financial difficulty and is unable to pay more. The state court looked at both Angela's need and John's ability to pay and was forced to find some compromise, fair to both parties. It was painfully aware of their financial problems and wrote that neither could live in the style each would like. The state court thus explains what might otherwise possibly be considered a low alimony award.

It is important to remember that Angela received the benefits from one-half of the proceeds from the sale of their home, just as John did. So her relative need decreased as John's relative ability to pay increased. Further, child support payments increase when the $40 a week alimony payments terminate, decreasing the children's relative need.

Angela is a well-educated woman, holding a responsible position as a principal of an elementary school. At the time of the divorce, she was earning $15,390 a year from this job. When this amount is added to the alimony of $40 a week and the child support of $80 a week, the total becomes $21,630 a year.[4] While this amount per year is by no means large, the state court thought it adequate under the circumstances, as does this court.

Moreover, there has been no evidence presented as to why Angela, if she honestly believes that she needs additional support, has not sought a modification of the state court Decision and Final Decree for increased alimony, support and/or maintenance. Nothing in this order precludes

continuing jurisdiction of the state court over alimony and support.

Based upon the opinion of the United States Court of Appeals for the Sixth Circuit in *Calhoun* and the opinions by this court as cited above and in *Calhoun*, the conclusion is dictated that the state court Decree as to the division of the retirement fund constitutes a division of property and not alimony and support.

Finding that the weekly advance payments applying to the retirement benefits do not constitute alimony and support, however, should not be construed as interference with the state court Decree as to the division of the marital property *in esse*. For that reason, this court has specifically iterated and emphasized above the state court prohibition, "that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff" [And Plaintiff herein]. The extent to which such funds are vested and the extent to which they may be so encumbered under the Ohio law is not now an issue *sub judice*, and is a question of state law properly to be determined by the state court. In any event, the judgment by this court should not be deemed any alteration of or interference in the implementation of the division of the retirement benefits property as vested on the date of the state court Decree, when payable.

THEREFORE, IT IS HEREBY ORDERED that the debt from the retirement benefits is dischargeable in bankruptcy as to the advance payments which the state court ordered be paid in weekly installments.

---

**4.** No evidence was adduced as to whether Angela supplements this total by any income from summer employment or by how much, if anything.