[Cite as *Lelak v. Lelak*, 2022-Ohio-3458.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| M. ANGELA LELAK (aka SIDDALL) | : | |
| | : | |
| Plaintiff-Appellant-Cross-Appellee | : | Appellate Case Nos. 29308 and 29321 |
| | : | |
| | : | Trial Court Case No. 1982-DR-1530 |
| v. | : | |
| | : | (Domestic Relations Appeal) |
| JOHN W. LELAK, JR. | : | |
| | : | |
| Defendant-Appellee-Cross-Appellant | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 30th day of September, 2022.

. . . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731 and MICKENZIE R. GRUBB, Atty. Reg. No. 0101353, 10532 Success Lane, Dayton, Ohio 45458
    Attorneys for Plaintiff-Appellant

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841 and JAMES D. MILLER, Atty. Reg. No. 0080357, 110 North Main Street, Suite 1200, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** This matter is before our court for the third time. Most recently, M. Angela Lelak (aka Siddall) ("Siddall") appealed from a November 2, 2021 trial court judgment awarding her 11% in statutory interest on $10,313 in retirement benefits that her ex-husband, John W. Lelak, Jr. ("Lelak") failed to pay. The judgment also awarded Siddall $2,000 in attorney fees based on a contempt finding against Lelak for failing to pay the benefits. That appeal was filed on November 22, 2021, and was designated Montgomery C.A. No. 29308.

**{¶ 2}** On December 2, 2021, Lelak also appealed from the same judgment; that appeal was designated Montgomery C.A. No. 29321. We consolidated the appeals and designated Siddall as the "appellant/cross-appellee" and Lelak as the "appellee/cross-appellant." *Lelak v. Lelak*, 2d Dist. Montgomery Nos. 29308 and 29321 (Order, Dec. 29, 2021), p. 2.

**{¶ 3}** According to Siddall, the trial court erred by failing to award her compound interest rather than simple interest. She further contends that the trial court abused its discretion by awarding her only $2,000 in attorney fees for this litigation, which has spanned six years. In addition, Siddall argues that the trial court erred in refusing to consider expert fees and court costs and abused its discretion by only sentencing Lelak to a three-day jail term for contempt.

**{¶ 4}** Lelak's cross-appeal claims that the trial court should have used a different variable rate to calculate the interest every year since 1989, rather than imposing an 11% rate from 1989 through all the years thereafter. Lelak further contends that the trial court

abused its discretion by awarding Siddall any attorney fees, because evidence of his income was not presented during the remand hearing and was not considered.

{¶ 5} For the reasons discussed below, we conclude that the trial court did not err in awarding simple interest rather than compound interest after finding Lelak in contempt. Lelak was not a fiduciary, and no statutory basis existed on which to award compound interest. The trial court also did not abuse its discretion in imposing only a three-day jail term for the contempt.

{¶ 6} However, the court did abuse its discretion in awarding Siddall only $2,000 in attorney fees and in refusing to consider expert fees and costs. The court's decision incorrectly narrowed the issue on which contempt was based, and its decision on attorney fees was not based on sound reasoning. As a global resolution of these issues, the trial court will be instructed on remand to award Siddall $53,123 in attorney fees, expert fees, and court costs.

{¶ 7} The trial court also erred in imposing a set rate of interest on the amount Lelak was required to pay on the unpaid retirement benefits. The court used an 11% interest rate, which the Ohio Department of Taxation ("ODT") certified as of August 31, 1989, and it carried that rate forward until the judgment was satisfied. However, the court should have used the statutory interest rate that R.C. 1343.03 dictated at that time, which was 10%. The court should have applied that rate from August 31, 1989, until June 2, 2004, when R.C. 1343.03 was amended to provide for a variable rate. From the latter date forward, the court should have imposed interest at variable rates as provided in R.C. 1343.03 and R.C. 5703.47. Accordingly, the trial court will be instructed on remand to

enter interest as indicated. The judgment, therefore, will be affirmed in part and reversed in part, and the matter will be remanded to the trial court for further proceedings consistent with our instructions.

## I. Facts and Course of Proceedings

{¶ 8} As noted, this case has been in our court twice before. Its history has been outlined in the two prior opinions. In the first, which was issued in 2019, we stated that:

In 1983, Lelak and Siddall divorced after 15 years of marriage. Of relevance hereto, the "final decree and judgment of divorce", issued on January 31, 1983, stated:

"As to the retirement benefits of the parties, the court is mindful that they cannot be withdrawn by either party at the present time so long as the parties are employed. The court finds that the total retirement of both parties is Twenty Thousand Nine Hundred Thirty-Nine Dollars ($20,939.00) which, for simplicity's sake, is rounded off to $20,900. Plaintiff shall keep the $87.00 in her retirement account and shall be entitled to receive from the Defendant the sum of Ten Thousand Three Hundred Sixty-Three Dollars ($10,363.00). The Defendant shall retain the balance. The Defendant shall pay the sum of $10,363.00 to the Plaintiff commencing with the first payday after the closing of the house in the amount of Fifty Dollars ($50.00) per week, unless Plaintiff has

been paid in full by that time. * * *

IT IS FURTHER ORDERED that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff."

*Lelak v. Lelak*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, ¶ 2 (*Lelak I*).

**{¶ 9}** We also noted that the last quoted paragraph was amended a few days later to state, in relevant part, that " 'It is further ordered that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff at any time prior to the full payment due to the Plaintiff.' " *Id.* at ¶ 3.

**{¶ 10}** Shortly after the divorce decree was issued, Lelak filed a voluntary Chapter 7 petition for relief in bankruptcy court. Lelak's petition named Siddall " 'as an unsecured creditor for "non-alimony obligations arising from the divorce judgment and decree, incl. retirement & Citicorp" in the amount of $18,050.' " *Id.* at ¶ 4, quoting *In re Lelak*, 38 B.R. 164, 166 (Bankr. S.D. Ohio 1984).[1] Siddall then filed a complaint in bankruptcy court, asking the court to decide if her claim for $10,363 in retirement benefits could be discharged. *Id.* If the $50 payments were considered alimony, maintenance or support as Siddall alleged, they would not be dischargeable. However, they could be discharged if considered a division of property, as Lelak alleged. *Id.* After reviewing the divorce decree, the bankruptcy court found the weekly payments were dischargeable. *Id.*

**{¶ 11}** In its decision, however, the bankruptcy court stressed that it did not intend to interfere with the state court decree or implementation of the retirement benefits. In

---

[1] *Lelak I* incorrectly cited the bankruptcy case as 36 B.R. 164. *See Lelak I*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, at ¶ 4.

this regard, the bankruptcy court stated:

> "Finding that the weekly advance payments applying to the retirement benefits do not constitute alimony and support, however, should not be construed as interference with the state court Decree as to the division of the marital property in esse. For that reason, this court has specifically iterated and emphasized above the state court prohibition, 'that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff' [And Plaintiff herein]. The extent to which such funds are vested and the extent to which they may be so encumbered under the Ohio law is not now an issue sub judice, and is a question of state law properly to be determined by the state court. In any event, the judgment by this court should not be deemed any alteration of or interference in the implementation of the division of the retirement benefits property as vested on the date of the state court Decree, when payable.
>
> THEREFORE, IT IS HEREBY ORDERED that the debt from the retirement benefits is dischargeable in bankruptcy as to the advance payments which the state court ordered be paid in weekly installments."

(Footnote omitted.) *Lelak I*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, at ¶ 6, quoting *In re Lelak*, 38 B.R. at 169.

{¶ 12} Our 2019 opinion further noted that, "[i]n 1998, Lelak, without notice to Siddall, withdrew the pre-tax sum of $181,035.44 from his retirement account." *Id.* at

¶ 7. Subsequently, "[i]n April 2016, Siddall filed a motion to show cause in which she sought to have Lelak found in contempt for failing to provide her with the 10-day notice required by the decree. Her motion also sought an order requiring Lelak to pay her the monies owed under the decree as well as any growth thereon. Finally, her motion requested an award of attorney fees and costs." *Id.*

{¶ 13} In response to the contempt motion, Lelak filed a motion to dismiss on October 5, 2016, based on an alleged lack of jurisdiction. A magistrate then held hearings in April 2017, August 2017, and June 2018. During the hearings, Siddall presented expert testimony from a bankruptcy attorney concerning the jurisdictional issue, from an accountant regarding the value of the retirement funds, and from an attorney as to attorney fees she had incurred. Lelak also presented testimony from a bankruptcy attorney and an accountant. Finally, both parties testified.

{¶ 14} After hearing the evidence, the magistrate found Lelak in contempt for failing to pay the appropriate share of his retirement funds and for failing to give notice of his withdrawal of the funds. The magistrate awarded Siddall $90,053.64 as her share of Lelak's retirement as of December 31, 2016, and $14,652 in attorney fees. *Id.* at ¶ 9.

{¶ 15} Lelak then filed objections and supplemental objections, and Siddall responded. On December 14, 2018, the trial court sustained Lelak's objections and found that the bankruptcy court's decision had discharged Lelak's weekly obligation to pay Siddall as well as the underlying obligation to pay her $10, 363. The court therefore found that Siddall had no interest in the retirement funds and that Lelak was not in contempt either for failing to pay her or for failing to give her notice of his withdrawal of

retirement funds. *Id.* at ¶ 10-12. *See also* Decision and Judgment (Dec. 14, 2018), p. 7-12.

{¶ 16} Siddall appealed, and we reversed the trial court's judgment. We first noted that:

Under the terms of the parties' divorce decree, the approximate $20,000 in Lelak's retirement account was appropriately designated as marital property, and Siddall was awarded one-half of that amount. Therefore, before the bankruptcy petition was filed, there existed a valid pre-petition judicial division of marital property which granted Siddall an interest in the subject property. That interest vested – that is, became fixed – at the time the divorce decree was filed. However, at the time of the divorce, Lelak's retirement benefits with the State Teachers Retirement System (STRS) were not subject to a qualified domestic relations order, nor could the benefits be withdrawn as Lelak had not retired. Thus, the divorce court ordered Lelak to make advance payments in the sum of $50 per week to Siddall to satisfy her portion of the account.

*Lelak I*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, at ¶ 18.

{¶ 17} We then remarked on the bankruptcy court's recognition of the "distinction between the $50 weekly payments and Siddall's fixed property interest in the retirement account." *Id.* at ¶ 20. We agreed with the bankruptcy court's distinction and concluded that "the trial court erred in finding that the bankruptcy court discharged Siddall's interest in the retirement account. The decree of divorce granted Siddall a property interest in

the retirement account, and the bankruptcy court's decision did not divest her of her judicially-declared ownership interest." *Id.* at ¶ 22.

{¶ 18} We also declined to address Siddall's remaining assignments of error. In this regard, we stated:

Since the trial court's assessment of the issues of contempt and attorney fees was based upon an incorrect interpretation of the bankruptcy court's decision and judgment, we conclude that it necessarily erred in its review of the magistrate's decision and Lelak's objections thereto. Thus, a reversal and remand is required. As issues of contempt require findings of fact, we note that whether Lelak should be found in contempt is a matter for the trial court to address in light of our decision. However, our decision should not be construed as requiring a contempt finding, an award of attorney fees, or a finding that Siddall is entitled to a particular monetary award.

(Footnote omitted.) *Id.* at ¶ 24.

{¶ 19} On remand, the trial court held a pretrial in December 2019 and ordered the parties to submit trial briefs, which they did in January 2020. On July 22, 2020, the court filed a decision again overruling Siddall's objections and refusing to find Lelak in contempt. Siddall once more appealed. *Lelak v. Lelak*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, ¶ 1 (*Lelak II*). We reversed the trial court's judgment again and remanded the case for further proceedings. *Id*.

{¶ 20} Our second opinion noted that:

In its decision on remand, the trial court stated it had considered "[Lelak's] failure to provide [Siddall] with notice as * * * criminal contempt because it required a single act of [Lelak] to be performed at a single moment in time. Punishment for his failure to do so is not coercive in nature, in that the time for compliance is long past and is not conducive to remedial punishment." The trial court also concluded, however, that Siddall had failed to prove criminal contempt because she had failed to provide evidence that Lelak had a specific intent to disobey the decree. The trial court also concluded that, even if Lelak's action constituted civil contempt, the evidence established the defense of impossibility of performance because Lelak had not known Siddall's new marital name or her address and thus had no means of notifying her of the withdrawal.

The trial court also stated it could not order Lelak to pay the amount owed because doing so would constitute an impermissible modification of the divorce decree, since the decree did not set forth an alternate method of payment of the pension benefits. Further, the court found the doctrine of laches operated to prevent it from crafting a method for such payment.

In sum, the trial court declined to find Lelak in contempt and ruled Siddall was not entitled to payment of the pension benefits, any growth thereon, or attorney fees.

*Id.* at ¶ 9-11.

**{¶ 21}** We disagreed with the trial court's finding that the matter involved criminal

contempt. In this vein, we stated that:

> * * * The mere fact that Lelak's conduct consisted of a single act was not dispositive of the type of contempt. Further, there was no support in the record for the trial court's finding that Lelak's conduct could not be corrected. We cannot discern any other basis in this record for the trial court's conclusion that Lelak had committed criminal contempt.
>
> Instead, we agree with the magistrate's finding that Lelak was guilty of civil contempt, for which a conditional sanction was appropriate. This sanction permitted Lelak to purge his contempt by complying with the decree. The purpose of the sanction was clearly to benefit Siddall by coercing Lelak into compliance with his obligations under the decree.

*Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 18-19.

{¶ 22} In discussing civil contempt, we stated that Lelak had admitted his failure to comply with the decree, which established a prima facie case of contempt, and that intent is irrelevant in civil contempt situations. *Id.* at ¶ 22-23. Furthermore, even if intent were relevant, we noted Lelak's admission in interrogatory answers that when he had filed bankruptcy, " 'the bankruptcy court revised the conditions for payment to occur at the age of mandatory withdrawal. The total amount to be paid to Plaintiff was $10,363 per the Final Decree and Judgment of Divorce filed January 31, '83.' " *Id.* at ¶ 24, quoting Plaintiff's Ex. 6 (Lelak's response to Interrogatory Number 3).

{¶ 23} We also rejected Lelak's "impossibility defense," finding that:

> The court's finding of impossibility was based upon evidence of

events that occurred years before the withdrawal of the pension funds. The one letter Lelak referred to was sent nine years before the withdrawal. There was no evidence he made any further attempts to locate Siddall. Moreover, the daughters reached the age of majority at least eight years before the withdrawal occurred. Lelak did not assert a lack of contact with them in their adulthood. In other words, Lelak did not present evidence he would have been unable to locate Siddall through their children at the time of the withdrawal. Also, he could have sought Siddall's last known address through the trial court.

(Footnoted omitted.) *Id.* at ¶ 26.[2]

**{¶ 24}** After concluding that Lelak was in contempt, we also rejected the trial court's laches finding, because "Lelak's inconvenience at having to satisfy his court-ordered obligation at this admittedly late date cannot be considered materially prejudicial." *Id.* at ¶ 33.

**{¶ 25}** We did disagree with Siddall's contention about the amount due on the pension. We agreed that Siddall was entitled to relief for additional growth, but we did not accept her remedy. We said that "in the absence of decree language or a post-

---

[2] Consistent with this point, we note that Lelak would have known of Siddall's address in April 1990, based on notice and orders the court sent to both parties concerning the emancipation of the parties' children and discontinuance of Lelak's child support obligation, as several documents were filed during that time listing Siddall's Newport, Kentucky address. Furthermore, the Kentucky address listed for Siddall in April 1990 was still her current address when she filed the motion for contempt in 2016. *See* Notice (April 3, 1990), p. 1; April 13, 2016 Motion to Show Cause, p. 1; and August 25, 2017 Hearing Transcript ("Tr. 2"), p. 125. *Lelak therefore would have been informed of Siddall's address and also would have been able to find and notify Siddall at all times between April 1990 and April 2016.*

decree order to the contrary, Siddall's entitlement to growth on her share of the retirement account began on the date Lelak could have withdrawn funds from the retirement account without incurring a penalty. This date cannot be determined on this record, so it must be so determined on remand." *Id.* at ¶ 37.

{¶ 26} Concerning the growth amount to which Siddall was entitled, we said that "the appropriate method would be to award Siddall statutory interest under R.C. 1343.03 from the date Lelak could have withdrawn funds from the retirement account until the obligation is satisfied." *Id.* at ¶ 38. We therefore instructed the court on remand to "determine the date Lelak was entitled to withdraw his pension benefits without penalty. The court shall then award Siddall statutory interest upon the sum of $10,313 from that date until such time as the decree is satisfied." (Footnote omitted.) *Id.* at ¶ 39.[3]

{¶ 27} Finally, we instructed the trial court to consider attorney fees on remand, since "trial courts have 'discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt.' " *Id.*, quoting *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 85 (2d Dist.). (Other citations omitted.)

{¶ 28} *Lelak II* was issued on February 26, 2021, and the case was again remanded to the trial court. The court then set a March 8, 2021 pretrial and scheduled the matter for a final hearing on July 29, 2021. After remand, discovery was conducted, including interrogatories and a deposition.

{¶ 29} At the July 29, 2021 hearing, the parties stipulated that August 31, 1989,

---

[3] The difference between this amount and the $10,363 listed in the January 1983 divorce decree is $50, which reflects one $50 payment Lelak made before filing for bankruptcy. *See Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 32.

was the first date that money could have been withdrawn from Lelak's retirement account with STRS.   July 29, 2021 Hearing Transcript ("Tr. 4"), p. 2.   The parties further agreed that the court would decide: (1) if interest should be calculated by using simple or compound interest; and (2) whether to apply the interest rate of 11% as of August 31, 1989, or a new interest rate for every year based on the rate statutorily prescribed for that year.   *Id.* at p. 3-7.

{¶ 30} At the hearing, Siddall also presented testimony from an attorney as the reasonableness of $41,436.50 in attorney fees that she incurred from February 2016 to June 23, 2021, and an additional amount of $4,499 incurred through July 29, 2021.   This was based on the issues involved, the experience and qualifications of Siddall's attorneys, and the reasonableness of their fees.   *Id.* at p. 14-20.

{¶ 31} During the hearing, the parties also stipulated that the expert fees were $3,625 for Siddall's accountant in the first hearing (Hochwalt) and $3,000 for the expert who calculated the interest rates (Kuvin).   *Id.* at p. 33-34 and Plaintiff's Ex. 1.   They also stipulated that Exhibit 8 represented court costs that Siddall had incurred.   *Id.* at p. 34. Finally, the court set a date for the parties to file briefs on the matters at issue.

{¶ 32} After the parties briefed the issues, the court filed a decision on November 2, 2021.   The court first found that interest should accrue at 11% on the unpaid balance of $10,313 from 1989 until the judgment was paid in full.   The court further held that simple interest, not compound interest, would apply.   Finally, the court awarded $2,000 in attorney fees.   The court reasoned that the majority of fees were not directly related to the issue of whether Lelak had committed contempt by failing to provide the 10-day notice

of withdrawal. The court also found that Lelak had not engaged in conduct, such as undermining the discovery process or overly protracting the litigation, that would justify awarding substantial fees. Decision and Judgment (Nov. 2, 2021) ("2021 Decision"), p. 4. In addition, the court found that legal issues concerning the 10-day notice were not complex and did not require extraordinary skill. *Id.*

**{¶ 33}** Based on these findings, the trial court found the total amount of interest and principal due as of July 29, 2021, to be $46,520.24, held Lelak in contempt for failure to provide notice, and sentenced him to three days in jail. The court also suspended the sentence, found Lelak could purge the contempt by paying Siddall the entire amount due, plus additional accrued interest, within 60 days, and ordered payment of $2,000 in attorney fees. As noted, both sides then separately appealed from the judgment.

## II.   Type of Interest Awarded

**{¶ 34}** Because Siddall is the appellant, we will address her assignments of error first. Siddall's first assignment of error states:

> The Trial Court Abused Its Discretion by Only Awarding Plaintiff
> Simple Interest, at a Rate of 11% Per Annum, for a Total of $46,520.24,
> Plus Any Additional Interest That Has Accrued Since July 29, 2021.

**{¶ 35}** Siddall contends that the trial court abused its discretion by awarding simple rather than compound interest. According to Siddall, Lelak should be held to have acted as a fiduciary with respect to the vested retirement benefits and breached that duty, acting in bad faith, when he withdrew the funds without giving notice. Siddall further notes that

Lelak was able to earn compound interest from 1989 to 1998 in the retirement system and from 1998 onward when he rolled the retirement funds over into a Fidelity retirement account.

**{¶ 36}** As a general rule, trial court decisions in domestic relations cases, including contempt matters, are reviewed for abuse of discretion. *E.g., Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 15, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 37}** The trial court found that compound interest was unwarranted because no fiduciary relationship existed. Its decision was based on R.C. 5815.04, unspecified case law, and the divorce decree's language. 2021 Decision at p. 3.

**{¶ 38}** "Simple interest is calculated only on principal and not on accumulated interest. * * * Compound interest, on the other hand, is paid both on the principal and the 'previously accumulated interest.' * * * In other words, simple interest does not merge with the principal and thus does not become part of the base on which future interest is calculated." *Mayer v. Medancic*, 124 Ohio St.3d 101, 2009-Ohio-6190, 919 N.E.2d 721,

¶ 1, quoting *Black's Law Dictionary* 887 (9th Ed.2009).

**{¶ 39}** As Siddall concedes, the Supreme Court of Ohio stated in *Mayer* that, "[a]lthough neither R.C. 1343.02 nor R.C. 1343.03 articulates whether interest that accrues thereunder is simple or compound, courts of appeals throughout the state consistently hold in relation to R.C. 1343.03 that in the absence of a statutory provision or specific agreement to the contrary, only simple interest accrues." *Id.* at ¶ 14.

**{¶ 40}** Siddall has not cited a statute that provides for compound interest, although she has implied one exists in the testamentary trust area. Appellant's Brief, p. 11, citing *In re Testamentary Trust of Hamm*, 124 Ohio App.3d 683, 692, 707 N.E.2d 524 (11th Dist.1997). The statute involved in *Hamm* was a probate statute, R.C. 2109.42, which states that trustees who have funds belonging to a trust are to invest them, and if they fail to do so, "the fiduciary shall account to the trust for any loss of interest that is found by the court to be due to the fiduciary's negligence." The court noted in *Hamm* that "interest in these cases is simple, rather than compound, unless there is a showing of intentional misconduct or bad faith."

**{¶ 41}** *Hamm* is irrelevant, however, because the case before us does not involve a trustee appointed by and accountable to the probate court. *See* R.C. 2901.01. Furthermore, while Lelak has been found in contempt, that does not equate to a finding that he either acted as a trustee of some sort or committed intentional misconduct.

**{¶ 42}** The trial court found no fiduciary relationship under R.C. 5815.04 and, presumably, associated case law, although the court did not cite any cases. This statute is part of the Uniform Fiduciary Act ("UFA") and defines various terms as used in that act.

R.C. 5815.04(B) defines a "fiduciary" broadly, as follows:

> "Fiduciary" includes a trustee under any trust, expressed, implied, resulting, or constructive, an executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust, or estate.

{¶ 43} While this definition is broad, it does not apply to the present case. "The Uniform Fiduciaries Act was developed to facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary." (Citations omitted.) *Master Chem. Corp. v. Inkrott*, 55 Ohio St.3d 23, 26, 563 N.E.2d 26 (1990), citing *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1100 (Utah 1988). *See also Nations Title Ins. of New York, Inc. v. Bertram*, 140 Ohio App.3d 157, 168, 746 N.E.2d 1145 (2d Dist.2000) ("the UFA was created to facilitate banking transactions"); *Rinehart v. Bank One, Columbus, N.A.*, 125 Ohio App.3d 719, 730, 709 N.E.2d 559 (10th Dist.1998) (Ohio's enactment of the UFA "was intended to facilitate commerce by relieving banks of the common-law obligation to ensure that a fiduciary properly uses funds for the principal's benefit").

{¶ 44} Thus, the UFA "shields a bank from liability when the bank knows that the individual is acting for the benefit of another. The inquiry to be made is not only whether the bank had knowledge of the existence of the fiduciary relationship but also whether the

fiduciary in fact possessed the authority to conduct the transaction in question." *Inkrott* at 27.

{¶ 45} Under R.C. 3103.05, there is a statutory fiduciary duty between spouses. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 283, 617 N.E.2d 1075 (1993), fn.3. However, once that relationship is severed, as it was here by divorce, the fiduciary relationship no longer exists. We have previously remarked that:

> When two people who have been living together in the marriage estate reach the point where they separate, cease to live together, and take positive steps to terminate their marital relationship, it may be assumed that they are antagonistic to each other, without any vestiges of what may have formerly been a confidential and fiduciary relationship.

*Clark v. Clark*, 2d Dist. Montgomery No. 6911, 1981 WL 2783, *6 (Apr. 23, 1981), discussing R.C. 3105.05 (which refers to contracts that parties enter into during marriage and imposes a confidential relationship) and R.C. 3105.06 (which refers to separation agreements and does not impose such a relationship).

{¶ 46} Furthermore, we agree with the trial court that the content of the divorce decree did not impose a fiduciary duty on Lelak. Under the common law, " '[a] 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981), quoting *In re Termination of Emp.*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603

(1974). "A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed." *Id.*, citing *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979).

{¶ 47} There was no contract or agreement here; the decree resulted from a judge's decision on contested divorce matters after holding a hearing. *See* Decision (Jan. 4, 1983), p. 1-12 (noting the court heard the matter on December 1. 1982, and the parties had presented evidence on the divorce complaint and counterclaim. The court also decided all issues pertaining to custody, support, property division, and so forth.) The decree itself did not impose a fiduciary duty; the proper remedy for failure to abide by the decree was a contempt action, as was asserted here.

{¶ 48} Because no fiduciary relationship existed, the trial court did not err in refusing to award compound interest. Accordingly, Siddall's first assignment of error is overruled.

### III. Award of Attorney Fees

{¶ 49} Siddall's second assignment of error states that:

The Trial Court Abused Its Discretion by Only Awarding Plaintiff $2,000 as and for Attorney Fees for Bringing the 2016 Motion for Contempt for Failure to Provide 10 Days' Notice of the Retirement Withdrawal.

{¶ 50} Under this assignment of error, Siddall contends that the trial court abused its discretion by awarding only $2,000 in attorney fees for the years of litigation that have

occurred as a result of Lelak's contempt of court. In this regard, Siddall first argues that she should be reimbursed for a total of $54,287, which represents all the fees and costs incurred through the final hearing on July 29, 2021. This total includes $45,788.50 in attorney fees, $7,936.50 in expert fees, and $562 in costs. According to Siddall, the trial court acted unreasonably in awarding only $2,000 in attorney fees and ruling out the possibility of recovering expert fees and other costs.

{¶ 51} Siddall's second argument is that the trial court acted unconscionably by awarding only $2,000 in attorney fees and ignoring the parties' 2018 stipulation that Siddall would be entitled to the $14,652 in attorney fees incurred between February 3, 2016 and February 20, 2018, if Lelak were found in contempt. In addition, Siddall contends that the court acted arbitrarily and unreasonably by finding that the contempt issue was not "novel, complex, or difficult," when the court's own errors and abuse of discretion required three appeals.

## A. Discussion of Trial Court Decision

{¶ 52} The law is settled that "[a] trial court may, within its discretion, include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 67, 556 N.E.2d 157 (1990). We review the trial court's decision for abuse of discretion, which, again, requires "an attitude that is unreasonable, arbitrary or unconscionable." *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985), citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140. Most abuses of discretion involve unsound reasoning,

which occurs where no sound reasoning supports the decision. *AAAA Ents., Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 53} In deciding to award only $2,000 in attorney fees, the trial court relied on R.C. 3105.73 and unspecified "appropriate case law." 2021 Decision at p. 4. As justification, the court made the following points: (1) "the vast majority of attorney fees and expenses were not directly related to the issue of whether or not [Lelak] committed contempt by failing to provide the 10-day notice of his withdrawal of retirement funds"; (2) Lelak "did not engage in any conduct that would justify an award of substantial attorney fees, for example [Lelak] did not undermine the discovery process or overly protract the litigation"; (3) "the legal issue of contempt regarding the 10-day notice was not novel, complex, or difficult"; (4) "the time and labor related to the contempt on the 10-day notice was not significant"; (5) the contempt issue concerning the 10-day notice "did not require any extraordinary professional skills"; (6) "the miscellaneous expenses regarding expert fees and litigation fees did not directly relate to the issue of contempt in this matter"; and (7) "the court received no testimony regarding the parties' incomes." *Id.* at p. 4-5.

{¶ 54} We disagree, and we find that the court's decision was based on unsound reasoning. We begin with R.C. 3105.73(B), which states that:

In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable,

the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶ 55} "Awards under R.C. 3105.73 are not contingent on a finding of contempt, nor are they limited just to attorney fees. Instead, litigation expenses are included, which encompass expert fees." *Buckingham v. Buckingham*, 2018-Ohio-2039, 113 N.E.3d 1061, ¶ 82 (2d Dist.), citing *Brooks v. Brooks*, 6th Dist. Fulton No. F-11-020, 2013-Ohio-405, ¶ 24. In reviewing the court's decision, we will discuss each item the court raised.


(i)   Relationship of Fees and Expenses to the Contempt Issues

{¶ 56} In our view, the trial court incorrectly restricted itself to the issue of the 10-day notice both with respect to the attorney fees and to the issue of whether it would even consider expert fees. As an initial point, the court's own decision stated, *in the conjunctive*, that: "On April 13, 2016, Angela filed a motion for contempt for failure to follow [the] August 31, 1983 Order *and* failing to provide 10-days' notice of retirement withdrawal." [4]   (Emphasis added.) 2021 Decision at p. 1. Therefore, the 10-day notice was not the only issue before the court. In fact, the jurisdictional matter was the major issue in the case.

{¶ 57} Furthermore, Lelak never disputed that he had failed to provide the required 10-day notice; his position from the beginning of the contempt case was that the trial court

---

[4] The court's reference to "August 31, 1983" is incorrect, as Siddall's motion referenced "1/31/83," which was the date of the final divorce decree. *See* April 13, 2016 Motion to Show Cause, p. 1, and Final Decree and Judgment of Divorce (Jan. 31, 1983).

lacked jurisdiction over the matter due to the bankruptcy discharge. Lelak October 5, 2016 Motion to Dismiss, p. 2. *See also* Tr. 2 at p. 254 and 256 (August 2017 hearing). There was also never any real dispute that Lelak withdrew money from his retirement account and failed to give any notice to Siddall. *Id.* at p. 262-263 (Lelak admitted he withdrew more than $180,000 from his STRS retirement account in 1998, kept around $22,000, transferred the rest into a Fidelity account, and did not notify Siddall).

### (ii) Conduct Warranting Substantial Fees

{¶ 58} As noted, the trial court's second finding was that Lelak's conduct did not warrant substantial fees since he did not either undermine discovery or overly prolong the litigation. Again, we disagree. "[T]he parties' conduct 'is a relevant factor in determining whether an award of attorney fees is equitable.' " *Buckingham*, 2018-Ohio-2039, 113 N.E.3d 1061, at ¶ 81, quoting *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963, ¶ 25.

{¶ 59} As noted, R.C. 3105.73(B) does not even require that contempt be involved for purposes of awarding fees. Nonetheless, it was involved here, and the statute does not restrict conduct simply to what occurs during the course of a post-decree proceeding. Here, the trial court again unduly restricted its focus to those events and not the nature of Lelak's overall conduct. As we stressed in our 2021 opinion, even if "intent" were relevant to civil contempt, "the record supports a finding that Lelak was fully aware that the bankruptcy court neither discharged his duty to notify Siddall of a pension withdrawal nor discharged his duty to pay her the portion of the retirement benefits awarded to her

by the divorce court." *Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 24.

**{¶ 60}** This awareness was demonstrated by Lelak's answer to an interrogatory that asked what amounts he had paid to Siddall to satisfy the retirement obligation. Lelak said he did not recall and then said, " '[f]urthermore, when the Respondent [Lelak] filed for bankruptcy, the bankruptcy court revised the conditions for payment to occur at the age of mandatory withdrawal.' " *Id.*, quoting from Plaintiff's Ex. No. 6.

**{¶ 61}** Consequently, Lelak knew from the time of his bankruptcy case (which began in 1983 and ended in 1984) that he was required to pay Siddall her part of the retirement funds at the time of mandatory withdrawal. He also knew that he had to notify Siddall of any withdrawals from those funds. He chose to do neither. And, as we noted, the court informed Lelak of Siddall's address in 1990 when the children were emancipated – an address where she remained until the contempt motion was filed in 2016.

**{¶ 62}** However, even if this were otherwise, Lelak did, in fact, attempt to impede or avoid discovery and prolong the post-decree litigation. For example, on December 13, 2016, Lelak filed a motion to show cause against Siddall for missing an October 31, 2016 hearing.[5] However, before that motion was filed, the parties had already filed an agreed order on November 1, 2016, indicating that Siddall and her attorney were present for the October 31, 2016 hearing and that the matter had been continued for a full hearing

---

[5] This was actually Lelak's second request for a show cause order. The first show cause order was filed in June 2016, claiming that Siddall's motion should be dismissed because she served him by certified mail rather than personally.

on February 10, 2016.   Agreed Order (Nov. 1, 2016), p. 1.[6]

{¶ 63} The court set a show cause hearing for February 10, 2017, and on January 13, 2017, Siddall filed a motion to strike Lelak's motion to show cause.   In particular, Siddall stressed there was no hearing on October 31, 2016.   Subsequently, at Lelak's request, the February 10, 2017 hearing (which was on the merits of Siddall's motion as well as Lelak's show cause motion) was continued until April 14, 2017.

{¶ 64} On January 13, 2017, Siddall also filed a motion to compel discovery.   She noted in the motion that Lelak had failed to provide information about withdrawals from any retirement account, claiming he "had no such records."   Then, on February 1, 2017, Siddall sent Lelak a second request for production of documents.   On March 23, 2017, the court set an April 14, 2017 hearing on the original motion to compel.   The same day, however, Siddall had to file a request for an immediate hearing on discovery because Lelak still had failed to provide copies of withdrawals from his retirement account. According to the motion, Siddall's certified public accountant ("CPA") needed the documents to do projections for the April 14, 2017 hearing.

{¶ 65} Lelak also failed to appear for the April 14, 2017 hearing, although his counsel did appear and cross-examined Siddall's witnesses.   Tr. 1 at p. 3.   At that point, discovery had apparently been received.   *Id*. at p. 69.   Nonetheless, while *Lelak, himself, had provided the documents that Siddall's CPA reviewed*, his attorney repeatedly objected to any use of these documents.   *Id*. at p. 73-74, 75, 77, 78-79, 80, 81, 82, 83,

---

[6] This order may have been slightly inaccurate, as later indications were that the October hearing was converted to a pretrial.   Nonetheless, for reasons that will be stated, there was no impropriety on Siddall's part, and Lelak's show cause motion had no merit.

84, 85, 86, 87, 88-89, 91, 92, 93, and 98.

{¶ 66} Lelak's counsel also declined to enter a continuing objection to the use of the documents Lelak had provided, stating that "[t]he Court of Appeals [presumably this court] has said that [continuing objections] don't count." Tr. 1 at p. 85. This is incorrect. We have not found authority from our district to that effect.

{¶ 67} In fact, trial courts often allow continuing objections to avoid constant interruption and prolonging proceedings. *E.g., State v. Bankston*, 2d Dist. Montgomery No. 24192, 2011-Ohio-6486, ¶ 27 (finding trial counsel was not ineffective because he had "effectively placed on the record a continuing objection" to admission of jail recordings); *State v. Koch*, 2d Dist. Montgomery No. 28041, 2019-Ohio-4182, ¶ 51; *Matlock v. Reck*, 2d Dist. Montgomery No. 27692, 2018-Ohio-1650, ¶ 18; *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 166-168; *State v. Shelby*, 4th Dist. Lawrence No. 15CA20, 2016-Ohio-5721, ¶ 21; *State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521, ¶ 40.

{¶ 68} The Supreme Court of Ohio has said that "[t]he purpose of a continuing or standing objection is to relieve a party who has unsuccessfully raised an objection from having to repeat the objection every time 'testimony of the same class' is offered." *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 48, quoting *Brady v. Stafford*, 115 Ohio St. 67, 152 N.E. 188 (1926), paragraph two of the syllabus.

{¶ 69} The court did say in *Holwadel* that "[a] single continuing objection is not sufficient to preserve objections to multiple pieces of evidence when the admissibility

determinations turn on different facts." *Id.*, citing *State v. Henness*, 79 Ohio St.3d 53, 59, 679 N.E.2d 686 (1997). Here, however, the documents in question were of the same class, i.e., they involved items Lelak provided in discovery, including correspondence between Lelak and STRS, Lelak's application for withdrawal of funds from STRS, Lelak's STRS statements, and Lelak's income tax returns. Tr. 1 at p. 76, 77-78, 80, 83, 87, and 90-91.

{¶ 70} As another instance of failing to timely cooperate with discovery, on August 11, 2017, Lelak disclosed witnesses who might be called to testify at the August 25, 2017 hearing, including his two expert witnesses, an attorney and CPA. On August 18, 2017, Siddall asked for a continuance, noting the discovery problems that had occurred. Siddall also stressed that she had sent discovery requests nearly a year earlier, in August 2016, asking Lelak to identify witnesses, but she had received no information. No decision was filed on this request, and the scheduled hearing took place on August 25, 2017.

{¶ 71} At this hearing, the following exchange also occurred when Lelak's counsel began questioning Lelak about his show cause motion:

[SIDDALL'S ATTORNEY]: We'll object. You've already made a ruling on that, that was not going to be heard; and that was a pretrial [the October 2016 hearing for which Siddall allegedly did not appear as ordered].

[LELAK'S ATTORNEY]: It's going to take less time for me to get this testimony than it will for you –

THE COURT: Well, I understand. But you're going into items that

are going to cause us to go over [the allotted time], *which aren't necessary, you know. It was a pre-trial conference. We discussed this.*

[SIDDALL'S ATTORNEY]: Right.

[LELAK'S ATTORNEY]: Are you barring –

THE COURT: I'm sustaining –

[LELAK'S ATTORNEY]: -- that testimony?

THE COURT: his objection.

[LELAK'S ATTORNEY]: You're sustaining his – so no testimony with regard to any expenses he incurred in coming into town.

THE COURT: *For a contempt that we –*

[LELAK'S ATTORNEY]: That has not been ruled on?

THE COURT: *-- dismissed?*

[LELAK'S ATTORNEY]: It's not dismissed.

THE COURT: *Dismissed the issue on?*

[LELAK'S ATTORNEY]: *All right.*

(Emphasis added.) Tr. 2 at p. 259-260.

{¶ 72} Despite the court's ruling, Lelak's counsel proceeded to ask him about expenses he had incurred. *Id.* at 260-261. During the same hearing, Lelak's counsel objected again at length to any use of the documents that Lelak had provided in discovery, even though Lelak was present, and even though Lelak's own expert had used these records to prepare for the hearing. *Id.* at p. 155-161. However, later in the hearing, Lelak then stipulated that all the documents he had provided were admissible. *Id.* at p.

261-262.

{¶ 73} Furthermore, contrary to statements Lelak's counsel made about authentication of documents during both 2017 hearings, we had previously said that "[t]he threshold standard for authenticating evidence is low, * * * and * * * [t]he most commonly used method is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1)." (Citations omitted.) *Stumpff v. Harris*, 2015-Ohio-1329, 31 N.E.3d 164, ¶ 29 (2d Dist.). We further observed that "[i]mplied authentication by production in discovery is not a new concept," and that "[n]umerous courts, both state and federal, have held that items produced in discovery are implicitly authenticated by the act of production by the opposing party." (Citations omitted.) *Id.* at ¶ 34-35.

{¶ 74} We concluded in *Stumpff* that "a trial court should consider the totality of the circumstances surrounding the documents' production, including, but not limited to, the specificity of the discovery request, the nature of the documents, and the party responding to the discovery request." *Id.* at ¶ 39. After reviewing the circumstances of that case, we found that a sufficient basis existed for authenticating financial records and tax returns that a party had produced, and that the trial court erred in excluding them. *Id.* at ¶ 40-48.

{¶ 75} The Supreme Court of Ohio later agreed with the position we took in *Stumpff*, stating that "[t]he school board emphasizes that Palmer itself produced the documents in discovery and asserts that that is a sufficient reason for regarding the documents as being what they facially purport to be. We agree. Indeed, '[i]mplied authentication by production in discovery' has been recognized as satisfying the

requirement of Evid.R. 901 – particularly when, as in this case, the documents are produced in response to a specifically tailored discovery request." (Footnote and other citations omitted.) C*olumbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 159 Ohio St.3d 283, 2020-Ohio-353, 150 N.E.3d 877, ¶ 22, quoting *Stumpff*, 2015-Ohio-1329, 31 N.E.3d 164, at ¶ 34.

{¶ 76} Here, the documents in question were letters Lelak exchanged with STRS, his application to STRS for withdrawal of his retirement funds, his 1099-R, and his income tax returns from 2011 to 2015. Tr. 1 at p. 73, 75, 76, 77, 78, 81-82, 83, 87-94, and 107, and Plaintiff's Exs. 1, 2, 3, 4, 14, 15, 16, and 17. There was never any question that Lelak provided these documents to his attorney, who gave them to Siddall's attorney during discovery. Tr. 1 at p. 90-91. As noted, Lelak also ended up stipulating to their admissibility. Thus, under *Stumpff*, there was no viable argument to be made about the documents' authenticity.

{¶ 77} Because more time was needed to complete the contempt hearing, the trial court continued the matter until February 16, 2018, and then continued it again twice more, until June 8, 2018. Following that hearing, the magistrate issued a decision on July 27, 2018, finding Lelak in contempt for failing to pay Siddall's share of the retirement benefits and for failing to notify her of his withdrawal of retirement funds. Magistrate Decision (July 27, 2018), p. 7-8. At that time, in addition to awarding Siddall attorney fees and damages, the magistrate overruled Lelak's motion to show cause. *Id.* at p. 8.

{¶ 78} After Lelak filed objections to the magistrate's decision and asked for time to file supplemental objections, he also filed a motion to dismiss Siddall's "untimely" reply

to his original objections. Subsequently, when Siddall filed a timely reply to the supplemental objections, Lelak filed yet another motion to strike that response as well. According to Lelak, Siddall's timely response should have been struck because it was not filed within 10 days of the date Lelak's original objections were filed. *See* Lelak's Oct. 12, 2018 Motion to Strike, p. 2. In responding to both of Lelak's motions to strike, Siddall pointed out that she was not required to respond until after Lelak filed supplemental objections.

{¶ 79} On December 4, 2018, the trial court overruled Lelak's motions to strike. In doing so, the court stressed that:

> This court, by policy, has routinely not required an opposing party to respond to objections to a Magistrate's Decision if a transcript has been ordered and the objecting party filed an extension of time within which to file supplemental objections once the transcript is filed. The general practice of this court has been that the opposing party shall file a response, if desired, to the supplemental objections within the required 10 day limitation period *after the supplemental objections have been filed*, with no requirement that the opposing party respond at all to the original objections filed.

(Emphasis sic.) Decision and Judgment (Dec. 4, 2018), p. 3.

{¶ 80} This history indicates that Lelak did not cooperate in discovery, attempted to hinder admission of materials without a reasonable basis, and prolonged the litigation and caused additional attorney fees by filing motions that had little or no merit.

Accordingly, we disagree with the trial court's finding that Lelak did not either try to undermine the discovery process or protract the litigation.

{¶ 81} We also note that Lelak's initial brief in this appeal included an assignment of error that attempted to relitigate the trial court's contempt finding. This caused Siddall to file a motion to strike the brief and request sanctions. In response to Siddall's motion to strike, Lelak claimed that "[t]his is the first instance wherein the trial court entered a judgment of contempt against [Lelak] from which he could appeal." Lelak April 22, 2022 Memorandum in Opposition to Motion to Impose Sanctions, p. 2. Lelak then said that, nonetheless, to "streamline the issues," he would, with leave of court, submit an amended brief omitting the challenged assignment of error. *Id.*

{¶ 82} Lelak's assignment of error had no possible merit however, since our prior opinion specifically found that the trial court had erred in failing to find Lelak in civil contempt. *Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 27. Therefore, nothing was left to litigate, either at trial or on appeal, concerning the contempt issue. We subsequently struck Lelak's brief and allowed him to submit an amended brief. *See Lelak v. Lelak,* 2d Dist. Montgomery Nos. 29308 and 29321 (Decision & Entry, May 3, 2022), p. 1-2. Thus, even on appeal, Lelak unnecessarily protracted the litigation and increased Siddall's costs.

(iii) Complexity of Legal Issues

{¶ 83} Furthermore, contrary to the trial court's finding, the legal issues here, in fact, were complex and difficult. To this point, the parties presented quite lengthy expert

testimony from attorneys who had practiced many years in bankruptcy court, and these attorneys gave differing opinions on whether the trial court had jurisdiction. Tr. 1 at p. 4-66 and Tr. 2 at 191-253. The trial court agreed with one side, but we reversed that decision on appeal. *Lelak I*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, at ¶ 22.

**{¶ 84}** Additional complicated issues involved whether growth in value of the pension should be included in the award, and, if so, what would be the proper method for calculating it. *See Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 36-39. Moreover, a further issue arose after the 2021 remand concerning the appropriate statutory interest rate to be used – a matter that is also involved in this, the third appeal. Again, in the trial court, both parties presented competing expert testimony from certified public accountants on how the pension amount and growth should be calculated. Tr. 1 at p. 67-118, and Tr. 2 at p. 162-191.

### (iv)  Time and Labor, and Extraordinary Professional Skills

**{¶ 85}** The trial court also found that "the time and labor related to the contempt on the 10-day notice was not significant," and that this issue "did not require any extraordinary professional skills." 2021 Decision at p. 4. For the reasons previously mentioned, the court incorrectly narrowed its focus to only the 10-day issue.

### (v)  Testimony About Incomes

**{¶ 86}** As a final matter, we agree with the trial court that there was no testimony concerning the parties' incomes. In our view, this factor is not significant. We assume

if it were important in reducing the amount of fees to be awarded, Lelak would have provided information on that point.

## B. Lelak's Arguments

{¶ 87} Although we have discussed the trial court's decision, we will additionally consider points Lelak made in his brief. In responding to Siddall's second assignment of error, Lelak first contends that no attorney fees are warranted because the original motion for contempt only raised his failure to provide 10-days' notice of withdrawal. This argument ignores the point that Siddall's motion specifically asked that she receive the funds she was awarded, plus additional growth in the funds. Apr. 13, 2016 Motion to Show Cause, p. 1.

{¶ 88} Lelak's second point is that no attorney fees were appropriate because Siddall extended little effort in pursing the issue of the 10-day notice. For the reasons we have already stated, this argument has no merit.

{¶ 89} Lelak further contends that even if any fees were to be awarded, they should be limited to the $14,652 expended prior to the first appeal of this case, due to the application of res judicata. However, res judicata does not apply here.

{¶ 90} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). Concerning claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or

occurrence that was the subject matter of the previous action." *Id.* at 382.

{¶ 91} This is not a subsequent action; it is simply a continuation of the same action, in which we have twice reversed the trial court on different grounds and have remanded for further proceedings. " 'A judgment that has been vacated, reversed, or set aside on appeal is deprived of all conclusive effect * * *.' " *Luri v. Natl. Union Fire Ins. Co. of Pittsburgh*, 2019-Ohio-1440, 129 N.E.3d 518, ¶ 21 (8th Dist.), quoting *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir.1992).

{¶ 92} As previously explained, the 2019 reversal was due to the trial court's incorrect finding that it lacked jurisdiction over the case. The 2021 reversal was based on the fact that the trial court incorrectly denied Siddall's motion for contempt. While the trial court rejected Siddall's contempt claim for different reasons in the two decisions, its refusal also caused the court to reject any award of attorney fees. *See* Decision and Judgment (Dec. 4, 2018), p. 14, and Decision and Judgment (June 22, 2020), p. 21-22.

{¶ 93} As a result, the trial court never made a decision on attorney fees and litigation costs until its November 2, 2021 decision, which is the decision currently on appeal. It is obvious that if additional proceedings occur due to reversal of a court's decision, the parties may (and most likely will) incur further fees and costs to address any remaining issues.

{¶ 94} "The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the

cause of action in the two actions be identical or different." (Citations omitted.) *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). "While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. * * * 'In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.' " *Id.*, quoting *Whitehead v. Gen. Tel. Co.* 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969). Again, this is not a "second action" or a "subsequent suit," and the issue of attorney fees was never litigated and determined. Therefore, neither aspect of res judicata applies.

{¶ 95} Based on the preceding discussion, the trial court's award of only $2,000 in attorney fees was not supported by sound reasoning.

## C. Claim for Expert Fees

{¶ 96} Siddall further argues that the trial court acted arbitrarily by refusing to consider expert fees she incurred below. The court's reason for refusing to consider these fees was that "the miscellaneous expenses regarding expert fees and litigation fees did not directly relate to the issue of contempt in this matter." 2021 Decision at p. 4-5. For the reasons previously discussed, we disagree, and we find that the court's narrowing of issues solely to the 10-day notice was unsupported by sound reasoning.

{¶ 97} As we noted, R.C. 3105.73(B) specifically includes litigation expenses within the items that may be recovered in post-decree proceedings, and this includes expert fees. *Buckingham*, 2018-Ohio-2039, 113 N.E.3d 1061, at ¶ 82. Here, Siddall's accounting experts provided relevant and needed information about the retirement funds. Therefore, the trial court should have considered fees for those experts.

### D. Litigation Costs

{¶ 98} In addition to the other items, Siddall argues that the trial court acted arbitrarily in failing to consider $562 in litigation fees she incurred. The trial court did not consider any litigation expenses other than attorney fees. For the reasons previously mentioned, the court's failure to consider any of these expenses was also based on unsound reasoning. The remaining question is the amount of fees and costs.

### E. Amount of Fees and Costs

{¶ 99} According to Siddall, she should be awarded the following amounts: 1) $18,674.50 in fees from February 3, 2016 until final judgment on December 4, 2018; 2) $22,762 in fees incurred between December 4, 2018 and June 22, 2021 (i.e., fees from the first appeal through the second appeal, which ended on the latter date); 3) $4,262.50 in fees incurred between June 22, 2021 and July 28, 2021 (during the second remand to the trial court); 4) expert fees totaling $7,936.50; and 5) $562 in court costs. According

to Siddall, the total amount is $54,287. [7]   Appellant's Brief at p. 20-24.

**{¶ 100}** In response to Siddall's assignment of error, Lelak contends that Siddall is not entitled to attorney fees.   However, he states, for the purposes of argument, that if any fees are to be awarded, they should be limited to the amount that existed when the magistrate issued his decision in 2018, i.e., $14,652.   According to Lelak, Siddall limited her request to that amount in prior filings in the trial and appellate courts in 2019 and 2020.

**{¶ 101}** It is true that when this case was initially remanded in 2020, Siddall asked for $14,652 in a supplemental brief and an amendment to her supplemental brief, which were both filed in January 2020.   However, she also stated that she had "incurred additional fees due to the appeal and remand" and asked the court "to award proper attorney fees in the amount of $14,657, *plus* those incurred after the Magistrate's Decision."   (Emphasis added.)   *See* Siddall's January 22, 2020 Supplemental Brief on Remand, p. 8 and 11.[8]   The trial court failed to award any fees because it did not find Lelak in contempt.

**{¶ 102}** After the court's decision on remand in June 2020, another appeal ensued,

---

[7] This total is incorrect.   Having added these amounts several times, our calculation is $54,197.   We also note that Siddall added $.50 onto the litigation fees incurred before the first appeal, i.e., her brief refers to a total of $18,674.50.   Appellant's Brief at p. 20. However, in the same paragraph, Siddall refers to fees of $16,452 and $4,022, which only add up to $18,674.   *Id.*   As will be noted later, there was testimony at the July 29, 2021 hearing that $18,674.50 was incurred for attorney fees. Tr. 4 at p. 11.

[8] Again, there is a slight discrepancy, as Siddall's brief on remand referred at one point to $14,652, and at another to $14,657.   January 22, 2020 Supplemental Brief on Remand, p. 8 and 9.   The amount the magistrate found was $14,652.   *See* Magistrate's Decision (July 27, 2018), p. 10.

and the case was reversed and remanded a second time. At that point, Siddall incurred substantially more attorney fees and other costs due to discovery, expert fees, a hearing on attorney fees, and post-trial briefs. The parties were also aware that Siddall was seeking attorney fees up to the Tuesday before the court's hearing on July 29, 2021. *See* Tr. 4 at p. 8-9. In fact, the court asked for evidence on "all of the attorney fees," so that it could make a determination. *Id.* at p. 10.

{¶ 103} At that time, Siddall presented evidence that her total attorney fees from February 2016 to June 23, 2021, were $41,436.50. *Id.* at p. 17, and Plaintiff's Ex. 2 (June 29, 2021 letter of attorney Martin Beyer). Additional time was expended between June 23, 2021, and the hearing date, which amounted to $4,499.50 in further attorney fees. *Id.* at p. 18-19 and Plaintiff's Ex. 10. Siddall's witness, Beyer, testified that the fees were necessary and reasonable and that the case involved "a degree of difficulty that would take specialization." *Id.* at p. 17 and 19. There were also occasions where Siddall's attorney did not charge for work performed. *Id.* at p. 20.

{¶ 104} Previously, Beyer had testified concerning the work that had been done up to the time of the first fee hearing, which occurred on June 8, 2018 (the $14,652 amount). Tr. 4 at p. 24 and Tr. 3 at p. 284-298. Lelak did not, during either hearing, question the reasonableness or necessity for the fees or the amounts billed. Instead, he took alternate positions: 1) no fees were warranted; 2) if any fees were allowed, they should be limited to only matters involving the 10-day notice issue; or 3) any fees awarded could not exceed $14,652 or, potentially, the fees incurred through the original decision that was made on December 4, 2018 ($18,674.50). *See* Tr. 4 at p. 8-11; Tr. 3 at p. 278

and 283; Plaintiff's Ex. 18. At no time did Lelak present any evidence disputing the actual reasonableness of the fees.

**{¶ 105}** Due to the undue length of this litigation and the fact that additional fees could actually be awarded for Siddall's expenses for this appeal and for any further proceedings on remand, a global resolution of attorney fees and litigation expenses to end this matter is required. App.R. 12(B) provides that:

When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order. In all other cases where the court of appeals determines that the judgment or final order of the trial court should be modified as a matter of law it shall enter its judgment accordingly.

**{¶ 106}** The law is well-settled that "to prevail on a claim for attorney's fees, the moving party must demonstrate that the fees were reasonable and necessary." (Citations omitted.) *Eldridge v. Eldridge*, 2d Dist. Greene No. 2018-CA-17, 2019-Ohio-233, ¶ 31.

**{¶ 107}** Given our prior conclusions, the evidence presented, and the lack of evidence or dispute presented by Lelak as to amounts and reasonableness of the fees if Siddall were to prevail on her claims, the following findings are in order:

1) Siddall is entitled to $41,436.50 for attorney fees up through June 23, 2021, plus an additional $4,499.50 for fees up through the final hearing on July 29, 2021. This includes attorney fees in both the trial and appellate courts. *See* R.C. 3105.73(B) (stating trial courts may award all or part of reasonable attorney's fees "[i]n any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding* * *").

(2) Siddall is entitled to recover expert fees and litigation costs. The parties stipulated to these amounts at the final hearing on July 29, 2021. See Tr. 4 at p. 31-36 and Plaintiff's Exs. 1, 7, and 8. While Lelak obviously did not concede that he should pay these amounts, there was no dispute they were incurred. These amounts were: $6,625 for experts; and $562 in court costs.

(3) While Siddall included an additional $1,311.50 in briefing at the trial court level and on appeal (which apparently represent additional fees for her attorney expert who testified about fees0, the record indicates that only the expert fees of $6,625 were discussed during the July 29, 2021 hearing. In addition, the attorney fee expert (Beyer) did not testify during either hearing (June 8, 2018 or July 29, 2021) about his own hourly rate or the time he expended. Tr. 4 at p. 14-28 and Tr. 3 at p. 283-298. Therefore, only $6,625 in expert fees will be awarded.

**{¶ 108}** Based on the preceding discussion, Siddall's second assignment of error

will be sustained, and the trial court will be instructed to enter judgment on her behalf for attorney fees, expert fees, and court costs in the amount of $53,123. We also note that no amount is being awarded for Beyer's preparation and testimony for either hearing or for the expert fees Siddall incurred for the bankruptcy attorney (Scott Kramer) who testified in April 2017.

### IV.   Suspended Sentence for Contempt

{¶ 109} Siddall's final assignment of error states that:

The Trial Court Abused Its Discretion by Only Ordering Defendant to a Three-Day Suspended Sentence if Defendant Does Not Pay Plaintiff Within Sixty Days of the Decision and Judgment.

{¶ 110} Siddall argues that the trial court abused its discretion by only imposing a three-day suspended sentence for contempt. According to Siddall, this was insufficient because, despite the court's order for Lelak to pay $46,520.24 plus additional interest accruing since July 29, 2021, Lelak has not paid anything, nor has he either obtained a stay or posted bond per our decision of February 16, 2022, which allowed a stay of execution if Lelak posted bond of $96,000.

{¶ 111} As noted, we review contempt decisions for abuse of discretion. *Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 15. Although the magistrate felt a 30-day jail sentence was appropriate, we cannot find that the trial court's decision to impose only a three-day sentence was arbitrary, irrational, or unreasonable. In this regard, we note that on May 18, 2022 (after Siddall's brief was filed), Lelak filed a notice

with our court indicating that he had posted an appeal bond of $96,000. Given these facts, Siddall's third assignment of error is overruled.


V.    Calculation of Interest Rate

{¶ 112} Having resolved Siddall's assignments of error, we will consider Lelak's cross-assignments of error.   Lelak's first cross-assignment of error states that:

The Trial Court Erred and Abused Its Discretion in Calculating the Judgment Interest Rate in 1989 (11%) instead of calculating the annual judgment interest rate annually for every year since 1989.

{¶ 113} Lelak contends that the trial court erred in using an 11% rate of interest that applied in 1989.   According to Lelak, the trial court should have applied a variable interest rate in 1989 and in each year thereafter, as demonstrated on Plaintiff's Ex. 1, which was submitted at the final hearing on July 29, 2021.    These percentages ranged from a high in 1989 and 1990 of 11%, to a low of three percent in 2020.   The remaining interest rates varied from three percent to 10%.   Lelak has not submitted any authority for his position, other than simply stating that the Ohio Tax Commissioner sets interest rates on judgments each year.   Likewise, Siddall's reply brief offers no analysis, other than commenting that the rate ODT certified in 1989 was 11%.

{¶ 114} In imposing an 11% interest rate, the trial court relied on R.C. 1343.03 and the parties' stipulations that: 1) August 31, 1989 was the earliest date that Lelak could have withdrawn his retirement without penalty; and 2) 11% was the interest rate ODT had certified as of that date.   We note that annual certified interest rates can also be found at

https://tax.ohio.gov/researcher/interest-rates/interest-rates (accessed on September 8, 2022) (table showing ODT certified interest rates between 1983 and 2023).

{¶ 115} In *Lelak II*, we agreed with Siddall that she was entitled to relief for additional growth on her part of the retirement account. However, we rejected her method of calculation, which was based on a conservative rate of growth in the stock market. *Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 36-37. Instead, we decided that, "in the absence of decree language or a post-decree order to the contrary, Siddall's entitlement to growth on her share of the retirement account began on the date Lelak could have withdrawn funds from the retirement account without incurring a penalty." *Id.* at ¶ 37. Because the information in the record was insufficient for purposes of determining that date, we remanded for calculation of the date. *Id.* Consistent with our opinion, the parties stipulated to a date of August 31, 1989, and the trial court used that date.

{¶ 116} We also instructed the court that "the appropriate method would be to award Siddall statutory interest under R.C. 1343.03 from the date Lelak could have withdrawn funds from the retirement account until the obligation is satisfied." *Id.* at ¶ 38. This was consistent with *McKay v. McKay*, 2d Dist. Montgomery No. 23702, 2010-Ohio-3348, which stated that "a court always has certain discretion under R.C. 1343.03 to determine *when* an amount became due and payable." (Emphasis sic.) *Id.* at ¶ 37. Again, the date turned out to be August 31, 1989, and the trial court applied the 11% interest rate that ODT had certified as of that date.

{¶ 117} Although courts have discretion to decide when an amount is due and

payable, an award of prejudgment interest itself is not discretionary, "regardless of the parties' good faith or bad faith actions or the certainty of the amount due." *Bischoff v. Bischoff*, 6th Dist. Huron No. H-05-005, 2005-Ohio-5879, ¶ 8, citing *Kott Ents., LTD. v. Brady*, 6th Dist. Lucas No. L-03-1342, 2004-Ohio-7160, ¶ 73. "[P]rejudgment interest does not punish the party responsible for the underlying damages * * * but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117, 652 N.E.2d 687 (1995). *See also Miami Valley Hosp. v. Edwards*, 2d Dist. Darke No. 07-CA-1717, 2008-Ohio-2721, ¶ 17 (finding that the trial court erred as a matter of law in refusing to award prejudgment interest); *Hance v. Allstate Ins. Co.*, 12th Dist. Clermont No. CA2008-10-094, 2009-Ohio-2809, ¶ 13-17, quoting *Royal Elec.* at 115 (award of prejudgment interest is mandatory but court has discretion to decide "when money becomes 'due and payable' ").

{¶ 118} R.C. 1343.03(A) currently states, in pertinent part, that:

[W]hen money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 119} R.C. 5703.47, in turn, requires the tax commissioner to determine the federal short-term rate on the fifteenth day of October of each year. R.C. 5703.47(B).

This subsection further states that "[f]or purposes of any section of the Revised Code requiring interest to be computed at the rate per annum required by this section, the rate determined by the commissioner under this section, rounded to the nearest whole number per cent, plus three per cent, shall be the interest rate per annum used in making the computation for interest that accrues during the following calendar year." *Id.* As an example, the rate determined in October 2021 (which would have been in effect at the time of the trial court's November 2, 2021 decision) was three percent. *See* Plaintiff's Ex. 1, p. 2. According to Ex. 1, the ODT certified tax rate on August 31, 1989, was 11%. However, that is not the same thing as what the statutory rate under R.C. 1343.03 was on that date. *Id.*

{¶ 120} While no judgment was actually issued on August 31, 1989, that is when the money awarded in the original 1983 judgment would have been "due and payable" under R.C. 1343.03(A), because Lelak could have withdrawn retirement funds at that time without penalty. As noted, we also found that Siddall was entitled to growth on the money since she was deprived of its use from August 31, 1989 onward. This is because "entitlement to interest, whether it be prejudgment interest, postjudgment interest, or postsettlement interest, ' "is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor." ' " *Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170, ¶ 12, quoting *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1988). (Other citation omitted.) However, we decided that rather than using the stock market, the better approach "would be to award

Siddall statutory interest under R.C. 1343.03 from the date Lelak could have withdrawn funds from the retirement account until the obligation is satisfied." *Lelak II*, 2d Dist. Montgomery No. 28872, 2021-Ohio-519, at ¶ 38.

{¶ 121} While the trial court did consider R.C. 1343.03, the issue still remains whether the court correctly selected a flat 11% interest rate from 1989 to 2021, as Siddall suggests, or should instead have used a variable rate from 1989 forward, as Lelak contends. *See* Siddall Reply Brief at p. 10-11, and Lelak Amended Brief at p. 5, citing Plaintiff's Ex. 1. After researching this issue, we find that neither side's position is correct.

{¶ 122} In *Jem Real Estate v. Heyden, Heyden & Hindinger*, 134 Ohio Misc.2d 5, 2005-Ohio-5935, 838 N.E.2d 891 (C.P.), the court noted the general principle that " '[i]f the legal rate of interest has been changed after the wrongful act or injury complained of, but before a final determination, the interest should be computed at the former rate up to the time of the change in the law, and at the latter rate for the period thereafter.' " *Id.* at ¶ 13, quoting 25 Corpus Juris Secundum, Damages, Section 155 at 544 (2002).

{¶ 123} Before the June 2, 2004 amendments to R.C. 1343.03, "the statutory rate for calculating postjudgment interest on a final judgment was ten percent." *Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 2008-Ohio-4542, 895 N.E.2d 145, ¶ 5, citing 149 Ohio Laws, Part I, 382, 386. The ten percent rate was in effect from July 5, 1982 until June 2, 2004, when the rate was "replaced with a variable rate tied to the variable federal short-term rate." *Id.* at ¶ 6, citing H.B. 212, 150 Ohio Laws, Part III, 3417. Previously, from June 30, 1980 to July 5, 1982, the interest rate was eight percent, and before that, it was

six percent. *Aire-Flo Corp. v. Situation Corp.*, 10th Dist. Franklin No. 89AP-629, 1991 WL 10924, *6 (January 31, 1991).

{¶ 124} Consistent with the principle *Jem* mentioned, courts have applied more than one interest rate where the situation overlapped amendments. For example, in *Aire-Flo*, the court awarded "prejudgment interest of six percent commencing July 18, 1980, of eight percent commencing July 30, 1980, and of ten percent commencing July 5, 1982 until May 18, 1989." *Id.* at *7. Likewise, where a husband failed to pay the property division in a November 30, 2000 divorce judgment, the amount was subject to 10% interest from that date through June 2, 2004, and to the variable interest rate after June 2, 2004. *Humphrey v. Humphrey*, 11th Dist. Ashtabula No. 2006-A-0083, 2007-Ohio-6738, ¶ 46-47.

{¶ 125} Consequently, the appropriate approach here would have been to calculate interest at the statutory rate as it existed from August 31, 1989 to June 2, 2004, and then apply a variable rate thereafter, as required by R.C. 1343.03 (which has retained essentially the same wording since 2004, despite a 2016 amendment). *Compare* Sub. H.B. 212, 2004 Ohio Laws File 63 with Sub. H.B. 166, 2016 Ohio Laws File 79. As a result, the trial court's approach of ordering an 11% flat rate was erroneous in two respects: 1) the interest rate the court used was not the 10% statutory rate in effect in on August 31, 1989; instead, it was the certified tax rate from the ODT table; and 2) the flat rate was inconsistent with the 2004 amendments to R.C. 1343.03, which require that a variable rate be applied.

{¶ 126} As to what variable rate should apply, we do agree with Lelak insofar as

he would apply the variable rate for each year after June 2, 2004, as listed on Plaintiff's Ex. 1 (and the ODT interest rate table).   An example of how this would work is illustrated in *Jem*, where the court calculated "legal interest (rounded to the nearest month)" as: "(a) 47 months (June 26, 2000, to June 2, 2004) at ten percent per annum on $15,000 = $5,875"; "(b) 6 months (June 3, 2004, to December 31, 2004) at four percent per annum on $15,000 = $300"; and "(c) 5 months (January 1, 2005, to May 31, 2005) at five percent per annum on $15,000 = $312") for a total interest award of "$6,487."   *Jem*, 134 Ohio Misc.2d 5, 2005-Ohio-5935, 838 N.E.2d 891, at ¶ 14-15.   These amounts represent the 10% interest that applied before the amendments and the variable annual certified tax rates for 2004 and 2005, as required under R.C. 1343.03(A) and R.C. 5703.47.   *Id.* at ¶ 16.

{¶ 127} In light of the above discussion, the trial court should have imposed a 10% interest rate from August 31, 1989 to June 2, 2004, and variable rates after that up to the time the judgment is paid.   These latter rates would be those set forth in Plaintiff's Ex. 1 and the ODT interest rate table.   The trial court was incorrect in choosing the 11% rate that ODT set for short-term rates in 1989, because R.C. 1343.03 imposed a 10% statutory rate up until June 2, 2004.

{¶ 128} Based on the preceding discussion, Lelak's first cross-assignment of error is sustained in part and is overruled in part.   This matter will be remanded to the trial court with instructions for the court to order interest as specified.   This will likely decrease the total amount previously awarded to Siddall, but additional interest will be due, since nearly a year has elapsed since the November 2, 2021 judgment.

## VI. Abuse of Discretion in Awarding Attorney Fees

{¶ 129} Lelak's second cross-assignment of error states that:

> The Trial Court Erred and Abused Its Discretion in Awarding [Siddall] Attorney Fees Related to the Erroneous Finding of [Lelak] in Contempt for Failing to Provide Ten-Days' Notice of His Withdrawal of the Retirement Funds.

{¶ 130} Lelak first contends that no attorney fees should be awarded because the trial court abused its discretion by finding him in contempt. For the reasons previously mentioned, this argument is improper. The contempt issue was settled during the last appeal, and raising the matter again is unwarranted.

{¶ 131} The remainder of Lelak's argument relates to matters we have already discussed, and it provides no basis for refusing to award attorney fees. Accordingly, the second cross-assignment of error is overruled.

## VII. Conclusion

{¶ 132} Based on the preceding discussion, Siddall's first and third assignments of error are overruled, and her second assignment of error is sustained. Lelak's first cross-assignment of error is overruled in part and is sustained in part, and his second cross-assignment of error is overruled. The trial court's judgment, therefore, is reversed in part and affirmed in part. This matter is remanded to the trial court with the following instructions: 1) the court is to enter judgment in Siddall's favor in the amount of $10,313

plus statutory interest of 10% from August 31, 1989 to June 2, 2004, and statutory interest at the variable rate certified by the Ohio Department of Taxation until the judgment is paid; and 2) the court is to award Siddall $53,123 in attorney fees, expert fees, and court costs. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

James R. Kirkland
Mickenzie R. Grubb
Dalma C. Grandjean
James D. Miller
Hon. Timothy D. Wood